## Du Pont *v.* Northern Pac. R. Co. and others.

*(Circuit Court, S. D. New York.   November 21, 1883.)*

**ACTION BY STOCKHOLDER TO RESTRAIN FURTHER ISSUE OF BONDS.**

An action by a shareholder against a corporation, to restrain it from a contemplated transaction which is *ultra vires,* may be maintained by the stockholder, and must be sanctioned by the court, although all the other stockholders of the corporation are willing to assent to and affirm the proposed course of action; but in a case of evident expediency, and where there is no attempt to go beyond the power conferred, a court of equity will not be swift to grant the stringent relief of a preliminary injunction to a stockholder assailing transactions in the corporate affairs of which the other stockholders do not complain, and to which they have given their consent.

In Equity.

*John E. Parsons* and *E. Ellery Anderson,* for complainant.

*George Gray, Joseph H. Choate,* and *Artemas H. Holmes,* for defendants.

WALLACE, J. This suit was commenced in a state court, and an order obtained restraining the defendants from the acts sought to be enjoined until the hearing of an order to show cause why a preliminary injunction should not be granted. The action having been removed to this court, the motion to vacate the restraining order has been heard as a motion, in substance, by the plaintiff for a preliminary injunction.

The plaintiff is a stockholder of the corporation defendant, having become such on or about the day when he commenced this action. The suit is brought against the corporation and its directors, individually, to obtain a decree adjudging that the corporation has no lawful right or power to create the $20,000,000 of second-mortgage bonds which its directors propose to issue, and to enjoin the defendants from creating the same. The plaintiff also prays in his bill that the defendants be restrained from applying the proceeds of such mortgage, if they are permitted to create the same, to the payment

of any indebtedness, or for any purpose other than the construction and completion of the railroad of the corporation. He also prays for a decree against the individual defendants for the value of the stock of the corporation alleged to have been misapplied by them, and of a scrip dividend on the preferred stock of the corporation alleged to have been wrongfully declared by them, and for an accounting and payment of moneys alleged to have been wrongfully appropriated by them for the construction of branch and terminal lines of railroad, and for other purposes not permitted by law.

The bill sets forth with particularity concerning the several alleged misappropriations of corporate funds and property by the directors which are assailed, but, for reasons which will be hereafter stated, it is not deemed necessary, for the purposes of the present decision, to consider them in detail.

Some general facts relative to the history, organization, and present position of the corporation should be stated in order to understand the questions involved in the present controversy. The present corporation is a company reorganized after the foreclosure of a mortgage created and issued by the original Northern Pacific Railroad Company. The original corporation was created by an act of congress passed July 2, 1864. The act authorized a continuous railroad between Lake Superior and a point on Puget sound, with a branch through the valley of the Columbia river to Portland, Oregon. The tenth section of the act provided that no mortgage or construction bonds should ever be issued by the company on said road, or mortgage or lien made in any way, except by the consent of the congress of the United States. The act granted to the company, its successors and assigns, for the purpose of aiding in the construction of the railroad, alternate sections of public lands to the amount of 20 sections per mile on each side of said railroad line through the territories of the United States, and 10 alternate sections of land per mile on each side of said railroad line through any state. By a joint resolution of both houses of congress of March 1, 1869, the consent of congress was given to the company to issue its bonds, and secure the same by mortgage upon its railroad and telegraph line, for the purpose of raising funds with which to construct its railroad and telegraph line. This consent was not sufficiently broad, as it did not extend to the franchises of the company, or to the lands other than those necessary for the operation of its road and telegraph line, but by joint resolution of May 31, 1870, it was declared "that the Northern Pacific Railroad Company be, and hereby is, authorized to issue its bonds to aid in the construction and equipment of its road, and to secure the same by mortgage on its property and rights of property of all descriptions, real, personal, and mixed, including its franchises as a corporation." Thereafter the company mortgaged all its property and franchises for $30,000,000. In 1875 this mortgage was foreclosed, and all the property and franchises were sold under a decree of

foreclosure to a committee of bondholders, who took a deed, and subsequently conveyed the same to the reorganized company. By the terms of the reorganization agreement, the stock of the new corporation, to the amount allowed by the act of incorporation, was divided into $51,000,000 of preferred stock, and $49,000,000 of common stock; and it was provided that first mortgage bonds to an amount not exceeding $25,000 per mile of completed road should be issued to complete and equip the road; and it was further provided that no other mortgage bonds should be issued except on a vote of at least three-fourths of the preferred stock at a meeting specially called and held in reference thereto. The first mortgage contemplated by the reorganization agreement was executed and is now outstanding, and there was unpaid thereon October 1, 1883, the sum of $42,727,000. The present corporation proceeded to construct and equip the railroad, and on the seventeenth of October, 1883, the directors issued a notice to the holders of preferred stock in which they represent that there is now required $9,459,920 to provide for the present unfunded debt of the company beyond the cash means available for that purpose, and that the additional sum of $5,500,000 will be required to complete the construction of the line and road now under contract; that they favor the execution of a mortgage on the property and franchises of the company for $20,000,000; that they can negotiate fifteen millions thereof with a syndicate composed of three banking firms, at a price of $87\frac{1}{2}$ cents per dollar cash, less 5 per cent. commissions, with a six-months' option to take three millions more on the same terms; that the sale of the bonds at that price will enable the company to meet all existing liabilities for construction and equipment requirements, and leave a reserve of $1,100,000 of the bonds in the treasury. The directors have called a meeting of the preferred stockholders, and have given notice that they propose to create the bonds and mortgage if authorized to do so by the vote of such stockholders.

It is not claimed by the plaintiff that the directors propose to create the bonds and mortgage without obtaining the requisite vote of three-fourths of the preferred stockholders. This being the situation, it is apparent that the only question that it is necessary to consider is whether or not the defendant should be enjoined from creating the proposed issue of second mortgage bonds, or from appropriating the avails of the bonds, if issued, to the purposes intended by the directors. If the directors in the past have diverted the funds or property of the corporation into illegitimate channels, whether for purposes that are beyond the corporate powers, or for purposes within these powers, but contrary to their duties as trustees, all of which it is proper to say is emphatically denied by them, it may nevertheless be true that what they now propose to do is not only expedient, but essential and vital to the interests of the corporation and stockholders. If, as is insisted for the plaintiff, the corporation has no power to

create the mortgage proposed, it must be held that the plaintiff is entitled to the injunction asked for.

An action by a shareholder against a corporation to restrain it from a contemplated transaction which is *ultra vires* may be maintained by the stockholder, and must be sanctioned by the court, although all the other stockholders of the corporation are willing to assent to and affirm the proposed course of action. In such a case the question is not one of discretion or expediency. The right of the stockholder to maintain the action and enjoin the transaction is personal to himself and independent of any right or interest of the corporation, and must be recognized, although all the other members are arrayed against him. Upon this branch of the controversy the contention for the plaintiff is that the joint resolution of congress was a privilege to the original corporation only, and did not pass to the present corporation upon the reorganization, and that, further, in any event, it only permitted a single mortgage to be created, and the power was spent upon the creation of the first mortgage. This seems to be an astute rather than a reasonable interpretation of the language of the joint resolution. The purpose of including the right to mortgage the franchises of the corporation in the consent of congress was palpably in order that a purchaser under a foreclosure might succeed to all the rights and privileges of the original corporation. As there was no restriction in that consent respecting the amount for which a mortgage might be created by the corporation, or relating to the scope or character of the mortgage, the implication seems not only fair, but irresistible, that congress intended to leave all this to the discretion of the corporation itself, to be exercised in view of the exigencies of the undertaking. Obviously, congress was quite indifferent whether the mortgage should be a large one or a small one, whether it should cover the whole or a part of the property of the company, or whether all the bonds to be secured should be issued at one time or in one series or class. The power conferred is limited only by the purpose expressed, that the bonds are to be issued to aid in the construction and equipment of the road, and are to be secured by mortgage.

The conclusion being reached that the corporation may lawfully create the proposed mortgage, the question then arises whether, under the particular circumstances of the case, the directors should be restrained from exercising their discretion in that behalf. All the allegations of the bill respecting the past misconduct of the directors are fully met and denied by the answer of the defendant, and it is asserted by them unequivocally that the avails of the mortgage are to be, and must of necessity be, applied to discharge the liabilities of the corporation for the construction and equipment of the road, and that bonds to a moderate amount are not to be negotiated at present, but are to be retained to provide against contingencies. While it is true, as alleged by the plaintiff, that three of the directors are mem-

bers of the syndicate to whom it is proposed to sell the bonds, it is not alleged that the price for which they are to be sold is inadequate or less than could be obtained elsewhere. If it should be assumed, that the plaintiff may ultimately sustain the allegations of the bill respecting the past transactions which he assails, the fact cannot be gainsaid that the corporation is now largely indebted, that it has no resources practically available, and must raise the means to meet its liabilities and complete the construction and equipment of its road. The directors propose to take such action only as shall be sanctioned by the requisite vote of the preferred stockholders. By the agreement of reorganization, to which every stockholder is a consenting party, the power to represent all, when it is proposed to create a second mortgage, is lodged in the preferred stockholders. It is delegated to them, and to them alone, to determine whether, in view of all the circumstances of the situation, the interests of the corporation will be best subserved by the creation of such a security. If their consent is fairly obtained it is conclusive. The plaintiff cannot be heard to complain if they are satisfied.

It may be proper to state in conclusion that a court of equity will not be swift to grant the stringent relief of a preliminary injunction to an officious plaintiff who seems to have acquired his interests as a stockholder with a view of assailing transactions in the corporate affairs of which existing stockholders do not seem to have complained. The purchaser of a lawsuit is entitled to what he has bought, and may insist that his rights shall be recognized and enforced according to the settled principles of law and the rules of procedure which obtain, irrespective of the motive of the litigant; but he can only insist that such preliminary relief be granted as is absolutely indispensable to preserve rights that cannot be adequately protected at the ultimate decision of the case.

The restraining order is vacated and a preliminary injunction refused.