SILVANUS F. JENKINS, JR., Respondent, *v.* AUBURN CITY RAILWAY COMPANY and Others, Appellants.

*Injunction — not granted against a private corporation in a suit brought at the instance of a rival.*

An injunction issued in an action brought by a stockholder of the Auburn City Railway Company to restrain it from leasing its road to the Auburn and Western Railway Company, which had been refused a certificate authorizing it to construct a road by the Railroad Commissioners, but which intended to use the road so to be leased to it in such a way as to parallel the road of

the New York Central and Hudson River Railroad Company, will be vacated where, from the affidavits read upon the motion, it appears that the stockholder, although alleging that his action was not brought to annoy the defendant company, but to prevent an illegal and unauthorized act on its part, does not deny an allegation of the defendant company that he purchased his stock (consisting of only two shares of the par value of twenty-five dollars each) at the instance of the attorneys of the New York Central and Hudson River Railroad Company, solely to prevent any proceedings that the defendant company might "take for their own advantage and benefit, and (that) this injunction was not procured to protect any legal right, but purely and solely for purposes of annoyance."

ADAMS and WARD, JJ., dissented.

APPEAL by the defendants, the Auburn City Railway Company and others, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 20th day of November, 1897, denying the defendants' motion to vacate a temporary injunction.

This action was brought to restrain the defendant, the Auburn City Railway Company, from executing, or, if the same had already been executed, from submitting to its stockholders for action, a lease of its property to the Auburn and Western Railway Company, and to restrain the other defendants, who are all the stockholders of the Auburn City Railway Company, from ratifying, confirming or authorizing such lease.

*William Nottingham*, for the appellants.

*Albert H. Harris*, for the respondent.

FOLLETT, J.:

September 22, 1897, the plaintiff took an assignment of two shares of stock of the par value of twenty-five dollars each in the Auburn City Railway Company. Two days afterwards he verified the complaint in this action, and on the same day (September 24, 1897) the injunction herein was granted. October 11, 1897, the defendants' answer was verified denying all the equities in the complaint, except that it is admitted that the Railroad Commissioners have not granted the Auburn City Railway Company permission to construct its proposed line, as required by section 59 of the Railroad Law. It is alleged in the complaint that this certificate was refused June 8, 1897. It is alleged in the answer that the New York Central and Hudson River

Railroad Company opposed the granting of the certificate by the attorneys for the plaintiff in this action, and it is further alleged in the answer that the plaintiff " is not now and never has been a stockholder in the Auburn City Railway Company," and " that the said plaintiff procured said certificate in bad faith and for no other purpose but to commence this action and annoy and harass the stockholders of the Auburn City Railway Company," etc.   In an affidavit, verified October 11, 1897, by the president of the Auburn City Railway Company, it is averred : " That the plaintiff's attorneys in this action are attorneys for the New York Central and Hudson River Railroad Company, and that the plaintiff, if he obtained the obsolete stock certificate above mentioned at all, obtained the same at the instance of said attorneys or the said New York Central & Hudson River Railroad Company for the purpose solely of preventing any proceedings that the Auburn City Railway Company and the Geneva, etc., Traction Company might take for their own advantage and benefit, and this injunction was not procured to protect any legal right but purely and solely for purposes of annoyance."

This affidavit was used on the order to show cause, granted October 12, 1897, why the injunction, granted September 24, 1897, should not be vacated.   In opposition to this motion, and in answer to the allegations in the answer and to the averments in the affidavit of October 11, 1897, the plaintiff verified an affidavit October 22, 1897, in which he avers that " said stock was sold and transferred to me on or before September 22, 1897, by J. H. Vail of Philadelphia, Pennsylvania, in consideration of fifty dollars actually paid to him therefor.   *   *   *   The action brought by me has not been brought for the purpose of annoying the defendants, but for the purpose of preventing an illegal and unauthorized action on their part."   The plaintiff nowhere denies that he purchased the certificate at the instance of the attorneys of the New York Central and Hudson River Railroad Company for the purpose solely of preventing any proceedings that the Auburn City Railway Company and the Geneva, etc., Traction Company might take for their own advantage and benefit.   Under this state of the proof it is evident that this action was not brought in good faith by the plaintiff for the protection of his own rights, but was brought by him at the instance of the New York Central and Hudson River Railroad

Company, the line of which is parallel with the proposed line of the Auburn City Railway Company.

Under such a state of facts the plaintiff is not entitled to an injunction *pendente lite.* The rule is well settled that an injunction will not be granted or sustained against a private corporation in a suit brought by an individual in the interest of a rival private corporation. ( *Waterbury* v. *Merchants' Union Express Co.,* 50 Barb. 157, a motion for a receiver ; *Belmont* v. *The Erie Railway Co.,* 52 id. 637, a motion to open an order appointing a receiver ; *Kingman* v. *The Rome, Watertown & Ogdensburgh Railroad Co.,* 30 Hun, 73, a motion for an injunction ; *Ffooks* v. *Southwestern Ry. Co.,* 1 Sm. & G. 142 ; *Forrest* v. *Manchester, etc., Railway Co.,* 4 De G., F. & J. 126 ; *Filder* v. *London, Brighton & S. C. Ry. Co.,* 1 Hem. & Mill. 489 ; *Robson* v. *Dodds,* L. R. [8 Eq.] 301 ; 2 Cook Stock & Stockh. [3d ed.] § 736, and cases cited ; 1 Spell. Extr. Rel. § 747, and cases cited ; 4 Thomp. Corp. § 4567 *et seq.,* and cases cited ; 1 Mor. Corp. [2d ed.] § 260 ; 2 Lind. Part. [3d Eng. ed.] 967.)

*Ramsey* v. *Gould et al.* (57 Barb. 398 ; S. C., 39 How. Pr. 62 ; 8 Abb. [N. S.] 174) was a peculiar case arising out of the Erie and Susquehanna Railroad war. It was brought to remove some of the directors of the Erie Railway Company, for the recovery of damages against them and for the appointment of a receiver of the Erie Railway Company. An injunction *pendente lite* was granted restraining the directors, which was vacated, and as one of the reasons for vacating it it was suggested that the plaintiff was a mere volunteer. (*Ramsey* v. *Erie Railway Co.,* 7 Abb. [N. S.] 156 ; S. C., 38 How. Pr. 193.) After this, and before answering, the extraordinary motion was made on affidavits perpetually to stay the prosecution of the action or to dismiss it, which was denied. The correctness of the decision was never questioned. That case will be best understood by reading the report in 7 Abbott (N. S.), 156, and 8 Abbott (N. S.), 174. It was a decision made at Special Term, and the rule declared that the court will not stay perpetually the prosecution of an action, or dismiss it on the ground that it is vicious or malicious, unless it plainly appears that the plaintiff has no meritorious cause of action, or is estopped from bringing it, is not germane to the question whether an injunction should be granted or sustained

in an action brought by an individual for the benefit of a private corporation against a rival private corporation. This case does not support the plaintiff's right to an injunction in the case at bar. In many cases an injunction *pendente lite* will not be granted or sustained, though a motion to dismiss the action on affidavits would not be entertained.

I think the order denying the motion to vacate the injunction should be reversed, with ten dollars costs and printing disbursements, and the motion to vacate the injunction should be granted, with ten dollars costs.

All concurred, except ADAMS and WARD, JJ., dissenting.

ADAMS, J. (dissenting):

The defendant, the Auburn City Railway Company, is a domestic corporation, owning and operating a street surface railroad in the city of Auburn, and the plaintiff is the owner and holder of two shares of the capital stock of that company.

On the 9th day of January, 1897, a certificate of incorporation of the Auburn and Western Railway Company was duly filed in the office of the Secretary of State at Albany, and in the clerk's office of Cayuga county. This certificate states that the object of the incorporators is to construct, maintain and operate a street surface railroad from the Auburn city line on West Genesee street to the intersection of Bayard and Stevenson streets in the village of Seneca Falls. This line of road would be about eleven miles in length, and it was intended to connect the same at Seneca Falls with another surface railroad, extending west to the city of Geneva, in Ontario county, and thus to parallel the New York Central and Hudson River railroad with a street surface railroad from the city of Auburn to the city of Geneva, a distance of some twenty miles.

After filing this certificate the Auburn and Western Railway Company applied to the Board of Railroad Commissioners of this State for the certificate required by section 59 of the General Railroad Law, that public convenience and a necessity required the construction of the road as projected in its articles of association. This application was, upon the 8th day of June, 1897, refused by the commissioners, upon the ground that public convenience and a necessity did not require the construction of the proposed railroad,

whereupon an arrangement was entered into between the Auburn and Western Railway Company and the Auburn City Railway Company, by which the latter agreed to execute a lease of its entire property to the former during the term of its corporate existence, and this action is brought by the plaintiff, as a stockholder of the Auburn City Railway Company, to restrain the execution of such lease.

It is the settled law of this country, as well as of England, that one railroad corporation cannot lease its property and franchises to another company, or to an individual, in the absence of express legislative authority. (*R. R. Co.* v. *Brown,* 17 Wall. 445; *Pa. R. R. Co.* v. *St. Louis, A. & T. H. R. R. Co.,* 118 U. S. 290; *Abbott* v. *Johnstown, etc., R. R. Co.,* 80 N. Y. 27; *Beman* v. *Rufford,* 6 Eng. L. & Eq. 106; 1 Sim. [N. S.] 550; *G. N. R. R. Co.* v. *The Eastern Counties R. R. Co.,* 12 Eng. L. & Eq. 224; 9 Hare, 306.)

In recognition of this doctrine the Legislature of this State has enacted that "any railroad corporation, or any corporation owning or operating any railroad or railroad route within this State, may contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract. * * *" (Gen. R. R. Law, § 78, as amended by chap. 676, Laws 1892.)

It is manifest, therefore, that the Auburn City Railway Company is not without ample authority to enter into the contract, the execution of which is sought to be restrained by means of this action, provided it is in a position to invoke the aid of the statute just quoted.

It is contended, however, by the learned counsel for the plaintiff that this section of the Railroad Law is not available to the defendant company for the reason that the Auburn and Western Railway Company cannot be said to be the owner of or engaged in operating any railroad or railroad route; and for the further reason that the company has been refused the certificate of the Board of Railroad Commissioners required by the provisions of section 59.

It is a fact which cannot, of course, be gainsaid, that the corporation known as the "Auburn and Western Railway Company" is not engaged in operating any railroad or railroad route; for no one

contends that it could enter upon such an undertaking without the consent of the Board of Railroad Commissioners, and this, as we have seen, it has been unable to obtain. It seems equally clear that that company does not own a railroad; and while it is averred in the defendant's answer that the necessary consents and franchises have been obtained to enable it to construct its proposed road, it is doubtful whether, upon the facts before us, it can be said to be the owner of a "railroad route" within the meaning of that term as used in section 78. But without deciding this question, I am clearly of the opinion that the Auburn and Western Railway Company cannot enter into a contract with the Auburn City Railway Company to lease and operate the latter's road until it has obtained the certificate of the Railroad Commissioners required by section 59. That section provides that "no railroad corporation hereafter formed under the laws of this state shall exercise the powers conferred by law upon such corporations, or begin the construction of its road, until * * * the Board of Railroad Commissioners shall certify," etc.

What construction is to be given to this language? It seems to me that its import is in no sense obscured by words of doubtful meaning, and that it needs only to be read to make clear the intent of the Legislature, which was undoubtedly that the obtaining of the certificate referred to should be not only a prerequisite to the construction of a railroad, but likewise a condition precedent to the exercise of any of the powers conferred by law upon a corporation organized for the purpose of constructing and maintaining such a road. That the right to obtain and operate a railroad, as lessee, is one of the powers thus conferred, seems too plain to require argument.

It has been well said by a learned jurist that "the statute does not recognize that, prior to the granting of the certificate, the corporation has any powers; it does not say it shall not exercise *its* powers, but the powers conferred by law upon *such* corporations. * * * Practically, a corporation that has no powers that it can exercise has no power at all, and is not in fact a corporation. * * * It is not complete as a corporation until the certificate mentioned has been granted; until that time it is an inchoate thing" (*People ex rel. Depew & S. W. R. R. Co.* v. *Board R. R.*

*Comrs.*, 4 App. Div. 259, 268); and this view of the construction to be given to the language of the statute is materially strengthened by the saving clause thereof, which provides that nothing therein contained " shall prevent any such railroad corporation from causing such examinations and surveys for its proposed railroad to be made as may be necessary to the selection of the most advantageous route."

The privilege thus reserved is one of the corporate powers conferred by law (R. R. Law, § 18), and one which could not be exercised until the certificate of the commissioners had been obtained, but for the express permission contained in the section from which the above quotation is taken ; and as this is the only power which is thus reserved, it was manifestly the intention of the Legislature to include all others within the inhibitory provision.

If I am correct in the views thus far expressed, it necessarily follows that the Auburn and Western Railway Company is to all intents and purposes without corporate life. It certainly cannot construct and operate a road of its own ; neither should it be permitted to evade the statute by operating one which belongs to another corporation, and as any attempt upon its part to acquire such a right as lessee would be clearly *ultra vires,* I do not see why the plaintiff is not correct in his contention that the defendant company has no right to dispose of its property in the manner contemplated by the proposed lease.

It only remains, therefore, to determine whether the plaintiff is in a position to invoke the aid of a court of equity in his effort to prevent the consummation of this illegal contract. If the plaintiff is a stockholder of the defendant company, as for the purpose of this appeal it must be assumed that he is, he has the undoubted right to insist upon a strict observance of the contract entered into between him and the corporation of which he is a member, and which is in effect that the latter shall confine its operations to such as are within the power conferred upon it by the statute under which it was created. As has been shown, the attempt upon the part of the corporation to lease its property and franchises to another company which had no legal existence was *ultra vires ;* the consummation of such a scheme would consequently have been a violation of the contract between the corporation and the stock-

holders, to prevent which an injunction is the appropriate remedy. (*Barr* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 444; *Kent* v. *Quicksilver Mining Co.*, 78 id. 159; High Inj. [3d ed.] § 605; Cook Stock & Stockh. §§ 666, 668, 671.)

The right to maintain such an action and to invoke the aid of a court of equity is one which is personal to the stockholder, and the motive which induced him to purchase his stock and to bring his action in no wise affects that right, and can have no legitimate bearing upon the nature of the relief to be awarded by the court. (*Ramsey* v. *Gould*, 57 Barb. 398; *Elkins* v. *C. & A. R. R. Co.*, 36 N. J. Eq. 5; *Hawes* v. *C. C. W. Co.*, 21 Am. Law Reg. [N. S.] 252; *Du Pont* v. *N. Pacif. R. R. Co.*, 18 Fed. Rep. 467.)

My conclusion of the whole matter, therefore, is that the plaintiff is in a position to invoke the aid which he seeks through the medium of this action, and that the order granting him a preliminary injunction should be sustained.

WARD, J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.