JOSEPH BLOCK, Suing for Himself as Stockholder and All Other Stockholders of the NOMA ELECTRIC CORPORATION in Like Situation Who Shall Choose to Make Themselves Parties to This Action, Plaintiff, and SAM SCHWARTZ, Intervening Plaintiff, v. MORTIMER J. PROPP and Others, Defendants.

Supreme Court, Special Term, New York County, October 13, 1939.

*Samuel R. Gerstein* [*Isidor Schlesinger* and *Abraham W. Sereysky* of counsel], for the plaintiff.

*Joseph Nemerov* [*Henry Schwartz, Edward A. Rothenberg* and *Solomon Herman* of counsel], for the intervening plaintiff.

*White & Case* [*Chester Bordeau* and *William J. Killoran* of counsel], for the defendants Mortimer J. Propp and the Bankers Trust Company, as sole surviving executor, etc., of Morris Propp, deceased.

*Samuel Cohen*, for the defendants Samuel Cohen, Jacob Lunitz and Joseph H. Tuttle.

*Archibald Palmer* [*Samuel Masia* of counsel], for the defendant Henry Hyman.

*William L. Schwartz*, for the defendant Noma Electric Corporation.

BERNSTEIN, J. This is a stockholder's derivative action brought by Joseph Block, the record owner of 100 shares of Noma Electric Corporation, against several former directors of that corporation and the corporation itself. By an order of the court one Sam Schwartz was permitted to intervene and became a coplaintiff. The complaint alleged four causes of action, but in the course of the trial the second and fourth causes of action were withdrawn and the first cause of action was dismissed as against the defendants Mortimer J. Propp, Jacob Lunitz and Henry Hyman and the third cause of action was dismissed as against the defendant Bankers Trust Company, as surviving executor of the last will and testament of Morris Propp, deceased, all the dismissals being had on consent. Early in the trial the defendant Noma Electric Corporation, which had been requested and had refused to bring the action, and which had later come under the control of one Henri Sadacca, announced that it was aligning itself with and supporting the plaintiffs in the action, and thereafter it gave the plaintiffs its active assistance and co-operation throughout the trial.

At several stages of the trial both the original plaintiff and the intervening plaintiff applied for leave to discontinue the action, the latter's counsel stating at one point: " At this time, after having made an examination of all the facts contained in the — or rather an examination of the cause of action contained in the complaint, I

move at this time to discontinue on behalf of Sam Schwartz. * * * I move to discontinue it on the ground that I have found so far as my plaintiff is concerned he has no merit for his cause of action, and so far as he is concerned, there will be no action brought. I have made that investigation." On the objection of the defendants, the court denied the application for discontinuance. In doing so it was moved by these substantial considerations: (a) that the action was motivated by personal spite and a stockholders' fight for control of the corporation; (b) that a prior action, brought by another stockholder with the co-operation of the plaintiff, on several of the causes of action alleged here, had been similarly discontinued after several days' trial; (c) that the plaintiffs' manifest purpose was to institute a new action to harass and oppress the defendants and involve them in heavy expense; (d) that the defendants had a substantial interest to require the prosecution of the action to a definite, speedy and final result; (e) that, inasmuch as the stock of the corporation was publicly traded in on the securities' markets, there was a public interest involved, and (f) that the corporate defendant did not join in the application. These considerations warranted the court's exercise of discretion to refuse a discontinuance. (*Matter of Butler*, 101 N. Y. 307; *Matter of Waverly Water-Works Co.*, 85 id. 478, 482; *Carlston* v. *Darcy*, 75 id. 375, 377; *Schering & Slatz, Inc.*, v. *American Pharmaceutical Co.*, 234 App. Div. 343.)

The corporation is engaged in the business of selling electrical products and appliances. It was organized in 1925 and there are presently outstanding approximately 221,000 shares of stock without par value amongst over 1,000 stockholders. The stock is listed and traded in on the New York Curb Exchange. The plaintiff Block had formerly been president of the corporation, but had been displaced by Morris Propp, and, upon the latter's death, by the defendant Henry Hyman. Later on he became the central figure in an unsuccessful stockholders' fight for control. As finally submitted, the plaintiffs' claims briefly were these:

(1) In 1932 Morris Propp, now deceased and represented here by Bankers Trust Company, as sole surviving executor of his estate, was the president and principal stockholder of 524 Broadway Corporation, which owned a loft building known as 524 Broadway. He was at that time also the president and a director of the defendant Noma Electric Corporation. His fellow directors were then the defendants Samuel Cohen, Joseph H. Tuttle and Henry Hyman, the plaintiff Joseph Block, and one Cornelius D. Wood, who is not being sued in the action. At that time the defendant corporation was occupying space in a building at 340 Hudson street and its lease

was about to expire. At a meeting of the directors held in February, 1932, it was decided to take a two years' lease of six lofts in the building 524 Broadway at an annual rental of $38,400, and such lease was executed in June, 1932, and the corporation removed to said demised premises. This action, it is charged, constituted a conspiracy on the part of the defendants to rent excessive space at an excessive rental for their own individual benefit and wasted the assets of the corporation.

(2) In 1936 the defendant Henry Hyman was the president, a director and general manager of the defendant corporation. He was also then the president and principal stockholder of United States Electric Corporation, which was engaged in the manufacture of electrical novelties. In the fall of that year, it is charged, said defendant, acting in concert with the other individual defendants, and with the intent only of benefiting his own company, caused the corporate defendant to buy from that company some Christmas tree electrical decorations, described as " Cheero-lites," which proved defective and unsalable and which resulted in a loss to the defendant corporation. His fellow directors at that time were Cohen, Tuttle, Lunitz and Mortimer J. Propp, who are joined here as defendants, and Joseph Pulvermacher, president of the Sterling National Bank and Trust Company, and George Adrian, president of the Bank of Yorktown, who are not being sued.

The proof tendered on the trial fell far short of establishing either one of those two claims. What it established as to the first claim was that the removal to the demised premises was of substantial advantage to the defendant corporation, which had a subsidiary company housed there; that the rents charged for the new premises were fair and reasonable under the rates then prevailing; that the removal resulted in a saving to the defendant corporation and its subsidiary of many thousands of dollars per year, and, finally, that the resolution to enter into such lease, adopted by the directors at a meeting on February 9, 1932, was supported by every director, except the defendant Hyman. This included not only Cornelius D. Wood, who has not been made a defendant, *but the plaintiff Block himself.*

The facts proven on the trial also conclusively negative the charge that the defendant Hyman, either alone or in concert with his individual codefendants, caused the purchase of Cheero-lites to be made for the benefit of the United States Electric Corporation. They show that the goods were not in existence at the time that the idea of manufacturing and marketing them was developed; that the defendant corporation was then seeking a Christmas electric light novelty which it could sell in competition with a similar novelty

produced by one of its competitors; that one of the employees of the United States Electric Corporation designed so-called trees and wreaths under the name of Cheero-lites to meet this need; that they were displayed and exhibited to the heads of the various departments of the defendant corporation and to its sales force and enthusiastically indorsed by them; and that they were submitted to and approved by every director of the corporation, including Mr. Pulvermacher and Mr. Adrian, with a full disclosure of every pertinent fact. They show that the defendant Hyman was a successful executive, who had built the corporation up to a high state of prosperity and enjoyed the full confidence of its directors and employees, and that in consummating the contract for the purchase of these articles he had the considered advice and approbation of the experienced heads of its sales force as to style, quantity and price. They show that the defendant corporation had no facilities for manufacturing these articles while his other company was thoroughly equipped to produce them. And finally, they show that they were sold to the defendant corporation at such fair prices that the transaction resulted in a loss to the United States Electric Corporation. Under such circumstances, the facts that the articles did not sell as well as was anticipated; that in their experimental stage of production many of them were imperfect and had to be replaced, and that the defendant corporation ultimately sustained a loss, cannot spell out fraud, dishonesty, or even bad faith on the part of the defendant Hyman and his fellow directors in the initiation and consummation of the transaction. (*City Bank Farmers Trust Co.* v. *Hewitt Realty Co.*, 257 N. Y. 62; *Pollitz* v. *Wabash Railroad Co.*, 207 id. 113, 124; *Leslie* v. *Lorillard*, 110 id. 519, 532; *Winter* v. *Anderson*, 242 App. Div. 430, 434; *Strobel* v. *Brownell*, 16 Misc. 657, 660.)

All the charges involved here were fully aired in the course of the fight for control of the company and were fully answered at the annual meeting of stockholders in June, 1938, by the re-election of the defendants as officers and directors. It was only after Sadacca had acquired stock control of the corporation early this year and assumed the management that the litigation was pressed. While the motive of a plaintiff and those acting with him will not bar a right to relief where an absolute legal right to such relief exists, it assumes importance on a disputed claim of legal right where it appears that the action was instituted and prosecuted as a result of a stockholders' feud and for the purpose of harassment. (*Jenkins* v. *Auburn City R. Co.*, 27 App. Div. 553; *Belmont* v. *Erie R. Co.*, 52 Barb. 637.) In this case it goes far toward disproving the plaintiffs' charges of malfeasance.

This action having been brought by the plaintiffs in their representative capacity for the benefit of the defendant corporation, which, if successful, would have been entitled to the proceeds of recovery, and such corporation having assumed the direction of the plaintiffs' laboring oar upon the trial, it must in fairness and equity · pay the penalty of defeat. (*Slauson* v. *Watkins*, 95 N. Y. 369; *Nelligan* v. *Groth*, 126 App. Div. 444.) Findings having been waived, judgment is directed in favor of the defendants Mortimer J. Propp, Samuel Cohen, Henry Hyman, Jacob Lunitz, Joseph H. Tuttle and Bankers Trust Company, as executor, etc., against the plaintiff, the intervening plaintiff and the defendant Noma Electric Corporation, with taxable costs to each of the successful defendants appearing by separate counsel. Settle proposed judgment accordingly on two days' notice.