Samuel Babin, J.
This stockholder’s derivative action in the right and for the benefit of General Transistor Corp. (hereinafter called GTC) was commenced on August 23, 1960. On August 30, 1960 its merger with General Instrument Corp. (hereinafter called GIC) was approved at a meeting of its stockholders. GIC, as successor to GTC, has now made two motions (1) “ for an order, amending the caption of the within action to reflect facts which have occurred since the commencement ” of this action, and (2) for an order pursuant to rule 107 *276 of the Rules of Civil Practice, dismissing the complaint herein on the grounds that the plaintiff lacks capacity to sue because his stock is registered in the name of a nominee of an escrowee and that there is a pending prior action seeking, in part, the same relief that is sought in the within action.
The defendants Herman Fialkov, Max Fialkov, Frank Pennucci and Carl Knobloch, who were directors, officers and stockholders of GTC, have moved separately to dismiss the complaint on the same grounds as underlie GIC’s second motion and also to dismiss it for legal insufficiency. Both the motion of GIC and that of the foregoing individual defendants also challenge the plaintiff’s capacity to sue on the ground that his interests are adverse and hostile to those of the corporation on whose behalf he seeks relief.
A statutory merger of GTC into GIC was consummated and all the necessary papers filéd in the appropriate County Clerks ’ offices subsequent to the commencement of this action. GTC, therefore, ceased to exist on August 31, 1960, and GIC, as its successor, became a defendant herein from and after that date. Accordingly, the first of the motions made by GIC, to amend the caption to reflect the foregoing, is granted.
Until July, 1958 plaintiff Arnold Malkan was the largest stockholder in GTC, the chairman of its board of directors and its general counsel. He sold the bulk of his stock interest, except for 16,000 shares (which after a two-for-one split became 32,000). These 16,000 shares he optioned to sell to GTC “ not later than the third anniversary of the first effective date of the registration statement” filed by GTC with the Securities and Exchange Commission on or about June 27, 1958. Malkan also agreed that for a period of three years, beginning with the date of closing, as defined in his agreement with GTC dated June 26, 1958, that he ‘ ‘ will not directly or indirectly own, manage, operate, join, control or participate in the ownership, management, operation or control of or be connected in any capacity with, any business under any name similar to that of GTC nor with any business manufacturing or selling transistors, any other form of semi-conductors or any other item currently being manufactured or currently being developed by GTC or any subsidiary. ’ ’
Defendants claim that within 90 days following the foregoing agreement plaintiff formed a competing business, Silicon Transistor Corporation, and that within six months he instituted an action in the Supreme Court, New York County, against GTC and the individual defendants herein for the rescission of the agreement, including the option, and for damages. GTC then *277 instituted an action in this court to enforce Malkan’s covenant not to compete. This action was transferred for consolidation with plaintiff’s action in the New York County Supreme Court where the consolidated action is now pending undetermined.
This court does not agree with the contention of the moving defendants that because of the subsisting unexercised option to sell the 32,000 shares of stock held by an escrow agent pending the exercise of the option, the plaintiff has not the capacity to sue derivatively. There is nothing in the option agreement which even inferentially deprives him of that right. Indeed that agreement provides in paragraph 5 (b) (3) thereof that ‘ ‘ The escrow agent shall from time to time, promptly after my demand therefor, execute in my favor a proxy or proxies permitting me to vote the securities then on deposit with the escrow agent.” In fact, at the recent stockholders’ meeting the plaintiff voted the optioned stock, although his right to do so was initially challenged. The escrow agent is obviously holding the stock to assure its availability for the exercise of the option, and until that happens all beneficial rights therein remain in and belong to the plaintiff, its beneficial owner, including the right to protect his interests by voting and, in a proper case, suing derivatively.
The defendants’ contention that the complaint should be dismissed on the ground that there is a prior action pending, seeking in part the same relief sought in the within action, is predicated on plaintiff’s pending undetermined action in New York County against GTC and others, including the individual defendants herein, wherein he seeks, among other things, to have the stock option agreement rescinded and nullified. It is argued that insofar as the instant complaint seeks to enjoin GTC from exercising said option, it should be dismissed because of the pendency of such prior action.
The court is of the opinion that the complaint herein contains no allegations upon the basis of which affirmative relief with respect to the stock option can be obtained. True, in paragraph “ 7 ” of the prayer, a permanent and temporary injunction is sought restraining GTC from exercising its option on plaintiff’s shares of stock but a complaint is not tested by the prayer for relief. (Johnson v. Johnson, 206 N. Y. 561, 568.) Just as “ asking for too much does not spoil a complaint” (Niagara Falls Power Co. v. White, 292 N. Y. 472, 480), it does not, absent necessary allegations in the body of the complaint, furnish a basis for a dismissal on the ground of the pendency of another action between the same parties for the same cause. Whereas in the action in New York County commenced in December, *278 1958 the plaintiff Arnold Malkan seeks relief to which he, individually, deems himself entitled, his complaint in the case at bar seeks redress to G-TC for claimed violations by the individual defendants of their fiduciary and trust obligations as directors and officers of the corporation in whose right the suit was brought. This branch of the defendants’ motion is accordingly denied.
The defendants’ contention that the plaintiff is disqualified from prosecuting this action is based principally upon the claim that he is a major stockholder of Silicon Transistor Corporation, an alleged competitor of the corporation for whose benefit this action has been brought, and that in forming said competing corporation, the plaintiff had breached his covenant not to compete contained in the agreement dated June 26, 1958; that in this very action plaintiff seeks substantial affirmative relief for his own benefit by way of injunction restraining the corporation from exercising its option to purchase his stock and also seeks to prevent the corporation from dealing with certain suppliers which, if granted, would harm the corporation and make it very difficult for it to produce certain items it has been producing and thus give corresponding advantage to its competitors, including Silicon Transistor Corporation; and, finally, extensive examinations before trial of the defendants, if granted, would give assistance to Silicon Transistor Corporation in that it would gain much valuable information concerning its purchasing requirements, sources of supply and costs.
In support of this branch of the motion the defendants cite Runcie v. Corn Exch. Bank Trust Co. (6 N Y S 2d 616, 622); Block v. Propp (174 Misc. 122), and Tenney v. Rosenthal (6 N Y 2d 204).
Runde was a stockholder’s action on behalf of a trust company, in which the plaintiff moved to strike out three defenses as insufficient in law. The second defense alleged a conspiracy on the part of the plaintiff with others to coerce certain New York banks and trust companies, including that in whose behalf the action was brought, to abandon the Lloyds policies which they were carrying and to refrain from renewing or continuing them; that plaintiff had purchased certain shares in various banks and trust companies, not as investments, but solely for the purpose of bringing similar actions at the instance of some insurance company or companies or persons unknown to the defendants whose interests were hostile to the corporate defendant and hostile to and in competition with Lloyds or its underwriters, and for ulterior purposes; and that the plaintiff was hot the real party in interest and did not come into court with *279 clean hands. Mr. Justice Hooley, in striking this defense as insufficient in law, noted: ‘ ‘ While a court of equity will refuse to entertain a stockholder’s action where it appears that the action is brought in the interest of a rival or hostile company, that is not the situation here * * *. The motive of the plaintiff in bringing this action is no concern of the court. As a stockholder she is entitled to enforce her clear legal rights.”
Bloch was a stockholder’s derivative action in the trial of which both the original and the intervening plaintiff sought leave to discontinue. On objection by the defendants discontinuance was denied, the court stating in the course of its opinion (p. 126): “ While the motive of a plaintiff and those acting with him will not bar a right to relief where an absolute legal right to such relief exists, it assumes importance on a disputed claim of legal right where it appears that the action was instituted and prosecuted as a result of a stockholders’ feud and for the purpose of harassment.”
Tenney stands for the proposition that an action in the right and for the benefit of a corporation, commenced by the plaintiff when he was a director thereof, may not be defeated either on the theory of abatement or of lack of capacity to sue, by effecting the plaintiff’s ouster as director. In the course of the opinion, however, Judge Fuld writing for a unanimous court noted at pages 209-210 that the plaintiff in such an action ‘ ‘ ‘ may not inaptly be compared to that of a guardian ad litem ’ that he “ is privileged to continue in such fiduciary capacity to prosecute the action for the benefit of the corporation so long as there is no compelling reason to remove him from his trust. To remove him, it is not enough that the corporation, controlled by the very directors accused of negligence or misconduct, request that some one else, an unnamed person, prosecute the action on its behalf; a persuasive case has to be made out to establish that the proper protection of the corporation’s interest or the proper ►conduct of the litigation would be better served by the elimination). or a change in the identity of the guardian ad litem. * * * It may also be that, in a proper case, the plaintiff should be disqualified for conflict of interest or some other reason.”
It can readily be seen that what was actually decided in these cases does not furnish authoritative guidance in the disposition of the delicate question here raised by the defendants. The fact that the plaintiff has a pending action against the corporation in whose behalf he seeks redress, to set aside the agreement containing the option to purchase his stock and his covenant not to compete, is not by itself a ground for holding that he brought the instant action for an ulterior purpose. Nor may *280 bad faith be inferred from the fact that he here seeks to prevent the corporation from dealing with certain suppliers when, in connection with such dealings, he claims that the individual defendants violated their fiduciary duties by obtaining valuable stock'allocations in the supplier companies for their own personal benefit and to the detriment of the corporation. If, ultimately, that be found to be true, it may well be that the corporation will be benefited by discontinuing its dealings with such suppliers.
More serious, however, is the charge that only a few months after signing the option agreement containing a restrictive covenant not to compete, the plaintiff organized an allegedly competing business in which he is still engaged in a substantial way. Such a conflict, if established, could make out a persuasive case for a change in the identity of the guardian ad litem, certainly when there was someone else named or suggested qualified to take his place in seeking redress for the alleged wrong to the corporation. The benefits that may come to the corporation from the successful prosecution of the action by a particular stockholder, when there is none other to take his place, however, could well outweigh any detriment that may flow from his being engaged in a competing business. Of course, such a conflict would have conclusive significance if, in the words of Judge Fkawk in Subin v. Goldsmith (224 F. 2d 753, 761, cert, denied 350 U. S. 883) “ plaintiff’s sole motive in suing were to aid his interest as competitor ”, but no such showing has been persuasively made by the defendants.
Even plaintiff’s alleged competition with the corporation is an issue which cannot be resolved on papers alone. The corporation’s plenary action to restrain such competition was brought some time in December, 1958, yet it still remains undetermined. In view of the pendency thereof this court believes it improvident to direct a hearing as provided by rule 108 of the Rules of Civil Practice, the evidence in which Avould in large measure1 be the same as that in the other action on the issue whether plaintiff is engaged in a competing business.
Under these circumstances, the court deems it the better practice to allow the defense as to plaintiff’s capacity to sue because of such conflict to be pleaded in the answer, with leave to press that objection for disposition by an appropriate motion after the determination of the pending action. In reaching this conclusion the court has not overlooked the possibility that extensive disclosure may be sought in the course of this action. Protection against divulging information confidential in nature, or subject to abuse by plaintiff, may be sought and obtained by *281 the close judicial scrutiny and safeguards afforded litigants when a specific motion for such relief is made. (Drake v. Herrman, 261 N. Y. 414, 417; La Monte v. Smith, 10 A D 2d 678; Daniels v. Hema Drug Co., Inc., 273 App. Div. 864; Griffin Mfg. Co. v. Gold Dust Corp., 245 App. Div. 385.)
The challenge by the individual defendants of the sufficiency of the complaint is based primarily, as noted on page 8 of their brief, on the fact that “ Nowhere does there appear one word showing the percentage of defendants’ interests in the supplier corporations. It is impossible to ascertain from the allegations of the complaint whether defendants had an interest in the supplier corporations substantial enough to influence their judgment.”
Unquestionably the extent of the stock interest of the individual defendants in the supplier corporations would have weight in an action to cancel a particular transaction on the ground that it was not negotiated at arm’s length. But as this court reads the complaint, no particular transaction is there sought to be avoided, nor has any supplier been made a party defendant. The gravamen of the cause of action is that the individual defendants, through their domination of the board of directors of GTC and their control of its purchasing policies secured for themselves valuable stock allocations in certain supplier corporations at the expense of GTC in that purchases on its behalf were not made advantageously.
No factual allegations of evidentiary value, however, are present to establish the charges of such improper conduct. For example, it is alleged upon information and belief that if the individual defendants “ had purchased hermetic seals on a basis of arms length bargaining with all available sources, the net result would have resulted in a lower cost to the Corporation ” (par. “ 30 ”); that “ the individual defendants used their positions with General Transistor and the purchasing power of the company as a lever to secure allotments of stock in other ‘ hot ’ electronic issues ” (par. “ 31 ”); that “ General Transistor would have been able to purchase supplies more efficiently and economically thereby saving General Transistor substantial sums of money had the individual defendants not had a conflict of interest whereby their purchasing policies might have been dictated or swayed by their personal interest rather than their fiduciary duty to General Transistor and its other stockholders ” (par. “ 35 ”); and, finally, that the individual defendants, officers and directors violated their fiduciary duties ‘ ‘ by not giving the Corporation the benefits of the increase in the value of stock in supplier corporations which they were able to obtain *282 only because of their dominant position in General Transistor and the control which they were able to exercise over the purchasing policies of General Transistor due to their said positions ” (par. “ 38 ”).
The foregoing and other allegations, equally' general, are wholly insufficient to state a cause of action. This complaint is not merely defective because of a lack of definiteness and precision, where an aggrieved party may move for a bill of particulars or for an order directing the service of an amended pleading, which will remove the indefiniteness, uncertainty or obscurity. (Gerdes v. Reynolds, 281 N. Y. 180, 184.) It is defective because it- does not allege the facts which constitute the wrong charged and general conclusions are not enough. (Morgenstern v. Cohon, 2 N Y 2d 302, 308; Gerdes v. Reynolds, supra.) While a pleading, attacked for legal insufficiency, must be accorded every fair and reasonable intendment and construed liberally as mandated by the provisions of section 275 of the Civil Practice Act, liberality “ cannot be used as a substitute for matters of substance ’ ’ and legal conclusions 1 ‘ utilized to supply material facts by inference within the doctrine of liberal construction.” (Didier v. Macfadden Publications, 299 N.Y. 49, 53.)
The complaint is accordingly dismissed with leave to plead over.