James J. DUANE, Jr., et al., Plaintiffs-Appellants,

v.

Walter P. ALTENBURG et al., Defendants-Appellees.

No. 13402.

United States Court of Appeals Seventh Circuit.

Jan. 10, 1962.

Sidney L. Garwin, New York City, Richard Orlikoff, Chicago, Ill., Norman Annenberg, New York City, for appellant.

Richard J. Walsh, Robert O. Case, Chicago, Ill., Norville, Walsh & Case, Chicago, Ill., of counsel, for appellees Altenburg and others.

William J. Friedman, John W. Day, Chicago, Ill., Friedman, Mulligan, Dillon & Urist, Chicago, Ill., of counsel, for appellee Webcor, Inc.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiffs-Appellants, James J. Duane, Jr. and Margaret W. Duane, doing business as James J. Duane & Co., bring this appeal from an order of the District Court which granted motions made by the defendants-appellees [1] to dismiss plaintiffs' complaint and amended complaint. This diversity action is a stockholders' derivative suit brought by plaintiffs as stockholders of Webcor, Inc., against the defendants to recover for alleged wrongs committed by them against Webcor.

Except for allegations of plaintiffs' ownership of stock in Webcor, that plaintiffs are residents of New York, are general partners doing business as James J. Duane & Co., and bring the action derivatively, all allegations of the complaint and amended complaint are made on information and belief.

The complaint alleges purchases and sales of products between Webcor and Dormeyer Corporation and the purchase of certain real property by Webcor from Dormeyer. It seeks that defendants be required to account to Webcor for their profits and Webcor's damages and that the real estate purchase be cancelled and rescinded. The amended complaint [2] adds a Count II concerning Webcor's purchase of the stock of Dormeyer for 290,000 shares of Webcor common stock, seeks to enjoin such transfer, to require a similar accounting to Webcor by defendants, and that a trust for the benefit of Webcor be impressed upon the stock of Dormeyer.

The complaint states that plaintiffs are informed and believe that defendant Haffa and his family own 20% of Webcor's outstanding stock, the remainder being widely held by more than 3000 stockholders, and that by reason of such stock ownership Haffa dominates and controls Webcor, chooses its officers and directors, who, at the times mentioned were subservient to the wishes and directions of Haffa, were controlled and dominated by him and determined the policies of Webcor in order to benefit Haffa without regard to the best interests of Webcor; that the majority of Webcor's directors are dependent upon Haffa for their tenure and for

1. Defendants-appellees are Walter P. Altenburg, James E. Archambault, Titus Haffa, John H. Ihrig, Harry F. Pavis, James F. Raleigh, all of whom are alleged to have served as directors of Webcor, Inc., for various periods between 1956 and the date the action was brought; Webcor, Inc., an Illinois corporation, on behalf of which the action is brought; and Dormeyer Corporation, an Illinois corporation. Nicholas Malz though named as a defendant was not served with summons.

2. Hereinafter both the complaint and amended complaint will be referred to as the complaint.

their salaries either as employees of Webcor or employees of Dormeyer, a corporation owned by Haffa and his family, and another director is president of a company which does business with corporations owned and controlled by Haffa and his family and that in or about 1955 Haffa entered into a plan and conspiracy with the then directors, joined in by defendants who thereafter became directors, to permit Haffa, his family and corporations they owned and controlled to buy from and sell to Webcor properties and products to the profit of Haffa, his family and corporations controlled by them, and to the detriment of Webcor.

After setting forth these preliminary allegations the complaint charges that in 1958, Haffa caused the board of directors to authorize the purchase of certain realty referred to as the Bellwood-Berkeley property from Dormeyer for $725,000.00 and such purchase was made by Webcor on August 25, 1958; that the fair market value of said property on that date "did not exceed $180,000.00". It is further charged that during the years 1956–1959, Webcor purchased materials, services and equipment in the approximate amount of $3,878,000.00 from corporations owned and controlled by the Haffa family "at excessive prices" and which "could and should have been obtained by Webcor at prices far below the prices paid"; that during the same period Webcor sold to Dormeyer and other corporations owned and controlled by Haffa and his family materials and equipment in the approximate amount of $1,855,000.00 and that said sales "were made at inadequate prices." Count II charges that pursuant to the plan and conspiracy previously mentioned Haffa caused Webcor in November 1960 to purchase all of the stock of Dormeyer from Haffa, his wife and sisters, for 290,000 shares of Webcor computed at $12.50 per share, a total acquisition price of $3,625,000.00, although Dormeyer since 1955 had constantly and consistently lost money, had an earned surplus deficit of $529,495.00, and a carry forward loss of $1,875,000.00; that the purchase price paid by Webcor for the Dormeyer stock "is excessive" and "a fair and adequate price for all of the Dormeyer stock is not in excess of $2,000,000.00"; and that the transaction is illegal as effecting a corporate merger in violation of Ill.Rev. Stat.1959, ch. 32, § 157.61 et seq.

It is alleged that because of their knowledge of and participation in the transactions alleged, and their control and domination by Haffa, a demand upon the directors of Webcor to bring the action would be futile and is therefore excused, and that under the law of Illinois demand upon the stockholders of Webcor to bring the action is not required or, in any event, is excused as being futile under the circumstances alleged.

Defendants' motions to dismiss assert, in substance, that the complaint fails to state a claim upon which relief can be granted in that it fails to show a conspiracy among the directors of Webcor, or their or Webcor's domination by Haffa or by Haffa and his family; fails to show that any of the transactions referred to were fraudulent, improper, or contrary to the best interests of Webcor; and fails to allege facts which would excuse failure to make application to the directors and to the stockholders for redress of the alleged grievances or for action in conformity with plaintiffs' wishes.

After hearing oral argument on the motions to dismiss the District Court entered an order "that the defendants' motions to dismiss Counts I and II are granted, and the plaintiffs' complaint and amended complaint are hereby dismissed". It is from this order that plaintiffs appeal.

Plaintiffs' assertions that the trial court erred are based on their contentions that under Illinois law they are entitled on the circumstances alleged, to maintain a stockholders' derivative suit without making a demand either upon the directors or stockholders of Webcor; that the allegations of the complaint are sufficient to state claims upon which relief can be granted for fraud consisting of violations of fiduciary duty; and that a summary

**518**

judgment was granted despite the existence of genuine issues of material facts.

■ Both plaintiffs and defendants assume that the District Court's disposition of the matter involved the grant of a summary judgment for the defendants with respect to the plaintiffs' alleged claim covering the Bellwood-Berkeley property transaction. But there is nothing in the record to so indicate. The District Court did not enter any judgment for defendants. The only order it entered was an order dismissing the complaint. And it is only by treating plaintiffs' appeal as an election by them to stand on their complaint, waiving request for leave to amend, that we can regard the order appealed from as a final appealable order. Asher v. Ruppa, 7 Cir., 173 F.2d 10.

■ Affidavits were presented to the District Court. But these affidavits relate to factors such as the motivation for the 1958 purchase of the Bellwood-Berkeley property, the value of the property as reflected by a mortgage company appraisal, and valuations assigned to the property at other periods as set forth in corporate documents and records. Such affidavits do not qualify as a basis for summary judgment. They are not competent for the purpose of negating the existence of a genuine issue of material fact where matters of motive or opinions on value are involved. Fogelson v. American Woolen Co., 2 Cir., 170 F.2d 660. Cf. Subin v. Goldsmith, 2 Cir., 224 F.2d 753; Colby v. Klune, 2 Cir., 178 F.2d 872. A proceeding on summary judgment is in the nature of an inquiry to determine whether or not a genuine issue of fact exists. It is not for the purpose of determining such an issue. Caylor v. Virden, 8 Cir., 217 F.2d 739. It does not permit of trial by affidavit. Campana Corporation v. Harrison, 7 Cir., 135 F.2d 334.

■ And here, in the absence of the actual entry of a judgment for defendants on the alleged Bellwood-Berkeley claim, the record does not afford a basis for any assumption that the able and experienced trial judge acted under a misapprehension that Rule 12(b) of the Federal Rules of Civil Procedure (28 U.S. C.A.) authorized treatment of the motions to dismiss as motions for summary judgment and disposition as provided in Rule 56 relating to summary judgment. To have so disposed of the matter on the affidavits here involved would have been error. And we will not impute error where the record does not require it. We conclude that the District Court's order, as indicated by the disposition it made in dismissing the complaint, was based on the conclusion that the complaint failed to state a claim upon which relief can be granted. It makes no mention of summary judgment.

■ We turn to consideration of whether the complaint is adequate to state a claim or claims for fraudulent violations of fiduciary duty. We are fully cognizant of the controlling principles of notice pleading authorized by the Federal Rules of Civil Procedure as interpreted and applied in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; United States v. Employing Plasterers Association, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618; Central Ice Cream Company v. Golden Rod Ice Cream Company, 7 Cir., 257 F.2d 417; Sandidge v. Rogers, 7 Cir., 256 F.2d 269; Asher v. Ruppa, 7 Cir., 173 F.2d 10. But those same Rules require (Rule 9(b), Federal Rules of Civil Procedure, 28 U.S.C.A.) that in all averments of fraud the circumstances constituting fraud "shall be stated with particularity". By so providing the Federal Rules incorporate a requirement well established at common law and continued in the modern systems or codes governing pleading. 2 Moore, Federal Practice, 2d Edition, § 9.03. And while pleading on "information and belief" is permissible as to matters peculiarly within the adverse party's knowledge (Carroll v. Morrison Hotel Corporation, 7 Cir., 149 F.2d 404, 406) it has also been held that allegations of fraud such as are here involved when made on "information, and belief" must be accompanied by a statement of the facts upon which the belief is founded. In this connection, in a situation analogous to that presented by the instant

case (Rezek v. Fishman, 340 Ill.App. 638, 92 N.E.2d 359, Abs.Dec.) Judge Kiley, then a Justice of the Illinois Appellate Court for the First District, made the following apt observation:

> "There are no facts stated upon which plaintiff's beliefs are founded and the allegations of fraud upon information and belief cannot therefore be sustained. Murphy v. Murphy, 189 Ill. 360 [59 N.E. 796]."

Apart from the question of the sufficiency of other allegations of the complaint, critical elements essential to adequate statement of a claim founded on a charge of fraud, and not concerning matters peculiarly within defendants' knowledge, are here alleged on information and belief only and without any statement of or reference to any facts upon which such beliefs supposedly rest. The value of the Bellwood-Berkeley property at the time of its sale in 1958 is not a matter peculiarly within the defendants' knowledge but is a subject equally open to ascertainment by plaintiffs. Nor are the availability of the materials, services and equipment allegedly purchased by Webcor, at "prices far below the prices paid", or the "inadequate prices" received for the materials and equipment sold, matters of such peculiar knowledge. And no allegations as to market prices of materials, services and equipment of comparable quality are made. Cf. Malkan v. General Transistor Corporation, 27 Misc.2d 275, 210 N.Y.S.2d 289, 295–296; Doyle v. Omundson, 28 Ill.App.2d 499, 171 N.E. 2d 659, (Abs.Dec.). Likewise, no facts are alleged which support plaintiffs' alleged belief that the purchase price paid for the stock of Dormeyer was "excessive" and that "a fair and adequate price for all of the Dormeyer stock is not in excess of $2,000,000.00." And although the transaction involved an exchange of Webcor stock for Dormeyer stock at a stipulated value assigned to the Webcor stock there is no allegation as to the "market value" of Webcor stock at the time of sale which would serve to indicate that the value of the Webcor stock transferred actually exceeded the $2,000,-000.00 value plaintiffs' assign to Dormeyer. That such information was equally available to plaintiffs is apparent from the assertion in their brief that Webcor stock is sold on the Midwest Stock Exchange.

■■ Illinois law requires "a strong showing" to impute dishonesty and mismanagement to directors of a corporation. Goldberg v. Ball, 305 Ill.App. 273, 282, 27 N.E.2d 575, 579. And although the rules as to pleading which govern actions in the federal district court are liberal they do not dispense with the particularity with which a claim grounded in fraud must be stated nor do they eliminate the requirement of a "strong showing" state law imposes as a prerequisite to a right to relief in a diversity action based on fraud. Plaintiffs' rights here are only those which Illinois would afford had the action been filed in a court of that state. The strong showing required can not be avoided by invoking federal diversity jurisdiction.

■ We find no merit in plaintiffs' contention that the purchase of the Dormeyer stock by Webcor effected a corporate merger without compliance with and in violation of Illinois statutory requirements governing mergers. An Illinois corporation is authorized to purchase and own the stock of another corporation. Ill.Rev.Stat.1959, ch. 32, § 157.5. The stock purchase did not effect a merger. Cf. Morris v. Interstate Iron & Steel Company, 257 Ill.App. 613, 620.

In view of our conclusion that plaintiffs' complaint is inadequate to state a claim for relief founded on a charge of fraudulent violation of fiduciary duty we find it unnecessary to consider the respective contentions of the parties concerning the question whether, under the circumstances alleged, Illinois law requires a prior demand on the corporate directors and stockholders as a prerequisite to a stockholder's right to maintain a derivative action.

We are of the opinion that the District Court did not err in dismissing plaintiffs' complaint. Its order is therefore affirmed.

Affirmed.