Nicholas J. TRYFOROS and Bebe Spanos Ikaris, Trustees, on behalf of themselves and all other stockholders of Icarian Development Company S. A., similarly situated, Plaintiffs,

v.

ICARIAN DEVELOPMENT COMPANY S. A., a Panamanian corporation, et al., Defendants.

No. 68 C 656.

United States District Court
N. D. Illinois, E. D.
June 13, 1969.

David J. Krupp, David E. Zajicek and Robert C. Howard, Chicago, Ill., for plaintiffs.

Seymour F. Simon, Chicago, Ill., for defendants Karones, J. L. Manta, Inc., Leo J. Manta, George L. Manta, Helen Manta, John L. Manta, Barbara Manta, Leo George Manta, Clara Manta Karones, Christ Karafotias and Angela Karafotias.

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

ROBSON, District Judge.

The defendants have moved to dismiss. For the reasons set forth below, this court is of the opinion that the motion should be denied.

This is a stockholders' derivative action, brought by the plaintiffs as the "liquidating trustees" of Nispan Corporation, a Panamanian corporation, against the Icarian Development Corporation, also a Panamanian corporation, and certain other defendants, citizens of the United States. Nispan Corporation is not, however, a party plaintiff. If it were, there would be no diversity jurisdiction, since there would be aliens on both sides of the lawsuit. 28 U.S.C. § 1332(a) (3); Compania Minera y Compradora de Metales Mexicano, S. A. v. American Metal Co., Limited, 262 F. 183, 186–187 (W.D.Tex.1920). The defendants argue that Nispan should be joined as the real party in interest and that the present plaintiffs do not have the requisite standing to sue in their own names. Both sides agree that, on substantive questions, Panamanian law governs, and, accordingly, each side has submitted opinions by Panamanian counsel.

Nispan Corporation was organized in 1963 as a holding company. Its sole reason for existence was to hold the shares of one of the defendants, Icarian Development Corporation. Icarian, in turn, held shares in two Iranian shipping companies. Nispan issued a total of 28,000 shares. Nicholas C. Spanos had 14,100; the plaintiff Bebe Ikaris and Beatrice Connides, both sisters of Spanos, held 6,450 each; and 1,000 shares were held by three members of the Nicozisis family.

Mrs. Ikaris asked Spanos by early 1967 to represent her with regard to the matters in the instant complaint. In the winter of 1967, Spanos retained Chicago counsel for Mrs. Ikaris. Prior to this, in 1966, Spanos had pledged his controlling interest in Nispan to Frank A. Wortman as security for a loan by Wortman to a corporation which Spanos was connected with. This loan was not repaid and Spanos was unable to honor his personal obligation to Wortman. Wortman then became (sometime in 1967) the full owner of the controlling interest in Nispan. He decided, for tax reasons, to dissolve Nispan, so that he could offset a large amount of ordinary income which he expected in the fiscal year 1968.

Wortman told the plaintiff Nicholas J. Tryforos, who had introduced Spanos to Wortman, to advise the other stockholders of his decision to liquidate Nispan. Tryforos set up a meeting on March 16, 1968, in his office. Wortman, Ikaris and Tryforos were present. These three were elected directors of the corporation with the apparent understanding that Wortman would not, because of

ill health, take an active role and that Tryforos would act in his stead and vote Wortman's shares. Mrs. Ikaris was concerned about the effect the dissolution would have on her plans to sue the present defendants. On March 30, 1968, after Wortman had resigned as a director (on March 18, 1968; but it was not voted on until the March 30, 1968, meeting), the remaining directors, Tryforos and Ikaris, voted to dissolve the corporation. As part of the plan of dissolution, all the assets, including choses in action, were assigned to Tryforos and Ikaris as "liquidating trustees." It was admitted that one of the purposes of this arrangement was to allow Mrs. Ikaris to sue the present defendants in the federal courts. However, it was also undisputed that Wortman had independent reasons for dissolving Nispan, and would have done so whether or not there was a possibility of recovering some of his losses through litigation. He said that he did not want to wait for the outcome of the suit (he was a lawyer), since he had pressing needs for the offsetting loss that Nispan represented. The plaintiffs' and the defendants' Panamanian counsel disagree on the propriety of this procedure. This court must therefore investigate the Panamanian law on this subject.

Basically, three steps are necessary before a corporation is formally dissolved under Panamanian law. First, there must be a meeting of the directors, who must vote for dissolution by a simple majority. Section IX, Article 80. They then call a meeting of the shareholders, who also must vote for dissolution by a simple majority vote. Section IX, Article 81. Second, an authenticated copy of this resolution to dissolve must be filed with the mercantile Registry. Third, this resolution must be published in a newspaper in Panama. After the completion of these last two requirements, registration and publication, called "formalities" in Article 84, "the corporation shall be deemed to be dissolved." The corporation, for three years after its

dissolution, "shall continue as a body corporate * * * for the express purpose of maintaining special procedings [sic] ('suits') which may be deemed convenient; for defending its interest as defendants, settling and closing its affairs, disposing and conveying its properties and dividing its capital stock. * * * " Article 85. In addition, after dissolution, "the Directors shall act as Trustees of the corporation with power to settle its affairs, collect all sums due or owing, sell and transfer all classes of its properties, divide its properties ('assets') among shareholders, when the debts of the corporation have been satisfied, and they shall *also* have the authority to sue for, in the name of the corporation, and recover debts and assets and to represent the corporation in proceedings against it which may be maintained." (Emphasis added.) Article 86.

The votes of the directors and shareholders took place on March 30, 1968. The plaintiffs' Panamanian counsel maintains that this was all that was really necessary to consider the corporation as "dead," and to allow the directors to make the assignment complained of here. The defendants' Panamanian counsel contends, on the other hand, that the corporation was very much "alive" until the "formalities" of registration and publication were observed. Since these "formalities" did not occur until September 25 and 26, 1968, more than five months after this suit was filed, he asserts that the corporation was not dissolved until September 26, 1968, and that the plaintiffs did not have the power to sue on behalf of the corporation until at least then, if at all. *Cf.* Article 67, Panamanian Code of Commerce.

However, even defendants' Panamanian counsel agrees that registration and publication are mere formalities. It would seem to follow that, in accordance with the plaintiffs' Panamanian counsel's opinion, if the defendants are not prejudiced by the filing of suit by the plaintiffs before these formalities were ob-

served, there would be little point in declaring that the plaintiffs could not maintain the instant action. The plaintiffs would merely turn around and file another suit, alleging the same wrongs against the same defendants, and in this same forum. The defendants, as well as the plaintiffs, have an interest in the speedy disposition of the claims of wrongdoing against them. Since Nispan was going to be dissolved in any event, and is presently irrevocably dissolved, it does not appear that the defendants will have this claim asserted against them by the now defunct corporation. The defendants will therefore be protected by any *res judicata* nature of whatever judgment is rendered in this suit. *Cf.* Blau v. Lamb, 314 F.2d 618, 619–620 (2d Cir. 1963). In the exercise of this court's discretion, in the interests of a "just, speedy, and inexpensive determination" of this action, the motion to dismiss will not be sustained on this ground. Rule 1, Federal Rules of Civil Procedure.

■ This court must, however, decide whether, after dissolution, the plaintiffs could follow the plan which gave them this cause of action. It will be remembered that Article 86 provides that, after the directors (the plaintiffs here), by operation of law, became the trustees of the dissolved corporation, they had several powers. One of these powers was the power to "sell and transfer all classes of its properties. * * *" In the plan of dissolution, the directors assigned all the corporation's assets to the plaintiffs as "liquidating trustees," including this cause of action. Although the directors as trustees could have sued "in the name of the corporation," Article 86 does not make it mandatory that they do so. They chose to effect the dissolution in a manner completely consonant with their powers under Article 86, since the powers are phrased in the alternative, in that the directors shall "also" have the power to sue in the name of the corporation.

The defendants still claim that since the corporation could sue even though dissolved, that Nispan must be joined as a party plaintiff, thus defeating diversity jurisdiction. This argument does not take into account the language of Article 85. Article 85 says that the corporation shall continue in order to maintain special proceedings or suits "which may be deemed convenient." The directors-trustees are logically the ones to exercise this discretion whether to sue in the corporate name or not, and in this case they chose not to do so because of the assignment to the plaintiffs. Thus, under this reading of Panamanian law, the directors-trustees could, in their discretion, allow the maintaining of a suit derived from the rights held by the corporation, but without naming the dissolved corporation as a party plaintiff. Where, as here, the plaintiffs followed local law in arriving at their present status, they did only that which they had a right to do. If one of the purposes of this procedure was to enable the plaintiffs to sue in the federal courts, this still does not rise to the level of collusion, as required by Rule 23.1(2), Federal Rules of Civil Procedure. *E. g.*, Corabi v. Auto Racing, Inc., 264 F.2d 784, 787, 75 A.L.R.2d 711 (3rd Cir. 1959), and cases cited therein. Also see 28 U.S.C. § 1359. The case cited by the defendants on this point, Ferrara v. Philadelphia Laboratories, Inc., 272 F. Supp. 1000 (D.Vt.1967), supports this court's conclusion. In *Ferrara*, the assignment was revocable and the transaction was not a "real" transaction. Here, the transaction is complete, irrevocable, and definitely "real." There is, therefore, no need for an inquiry or a hearing.

The defendants contend that the plaintiffs have conceded that Nispan should be joined. They point to paragraph 5 of the complaint, which states:

> "This Court has jurisdiction over this cause of action under 28 U.S.C. § 1332(a) (3) by virtue of the fact that this is a civil action between citizens of different states in which citizens of foreign states are additional parties."

The defendants then argue that since the plaintiffs have alleged that more than one citizen of a foreign state is involved, and the only additional foreign citizen that could be involved (in addition to Icarian) is Nispan, that this amounts to a concession that Nispan should be joined as a party plaintiff. This wording, however, comes directly from the terms of the statute, and, even though there is a plural, includes the situation, as here, where there is only one foreign citizen. This is, therefore, hardly a concession that Nispan should be joined.

■ The defendants further argue that the allegations of fraud in the complaint are not pleaded with the requisite particularity. The plaintiffs simply respond by saying that the complaint does not use the term "fraud" and that, therefore, the terms of Rule 9(b) do not apply. The plaintiffs also said that they "are indeed of the opinion that defendants' course of dealing is tantamount to fraud and they have so advised the court, but their complaint is couched in terms of deliberate misappropriation of corporate assets." However, as plaintiffs concede, this conduct amounts to fraud on those concerned with the defendant corporation. Rule 9(b), however, states that "the *circumstances* constituting fraud * * * shall be stated with particularity." (Emphasis added) The words "fraud" or "fraudulent" need not be used. *E. g.*, Nolan Bros., Inc. v. United States, for Use of Fox Bros. Const. Co., 266 F.2d 143, 145–146 (10th Cir. 1959). Since the instant complaint must comply with the requirements of Rule 9(b), it must be determined whether the complaint does aver fraud with the necessary particularity.

■ In paragraph 11, the complaint alleges "upon information and belief" that the defendants and one Chris Avaliotis "unlawfully conspired and agreed together to divert from Icarian the proceeds which it should have realized from the transactions contemplated" by a Settlement Agreement, dated June 24, 1965. Whenever allegations such as these are on "information and belief," the facts supporting such information and belief must be set forth. *Cf.* Duane v. Altenburg, 297 F.2d 515, 518 (7th Cir. 1962). The plaintiffs in their complaint set forth certain acts which they allege were in furtherance of the alleged conspiracy. Paragraphs 12 through 17.

These facts surround a so-called Settlement Agreement entered into by the defendant Icarian with one Ahmad Chafik on June 24, 1965. Under this agreement, a certain amount of cash was to be transferred to Icarian, and two ships were to be transferred to an Iranian corporation, as Icarian's nominee. As consideration, Icarian transferred substantially all its assets to companies owned or controlled by Chafik. The complaint alleges that the defendant Christ Karafotias received the cash as the attorney for Icarian, and diverted this payment to his own use, the use of the other defendants, and other parties unknown to the plaintiffs. None of this money, alleges the complaint, was ever received by Icarian.

The two ships were allegedly transferred directly to the Iranian corporation named in the agreement, but the complaint asserts that there was no obligation entered into or recognized by this Iranian corporation in favor of Icarian. The defendants, it is further alleged, are creditors of this Iranian corporation, and, presumably, stand to benefit if no obligation or debt owed to Icarian is recognized. As a result, conclude the plaintiffs, Icarian has been wrongfully divested of substantially all its assets, has ceased to do business, and has failed to pay its creditors.

■ This court cannot see how the plaintiffs could be more "particular." Even though the plaintiffs chose not to respond to the defendants' arguments relating to the pleading of fraud, it is this court's conclusion that the requirements of Rule 9(b) have been met. The circumstances surrounding the transfers of

**196**

the cash and the ships are not "equally open to ascertainment by plaintiffs," as was the case in Duane v. Altenburg, supra, at 519. Although the plaintiffs are not required to meet the Illinois requirements of a "strong showing" of dishonesty and mismanagement, the allegations of a diversion of funds and a transfer without the recognition of a debt to Icarian, do meet such a standard, should the same showing be necessary under Panamanian law. Robison v. Caster, 356 F.2d 924 (7th Cir. 1966); Duane v. Altenburg, supra. Cf. Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 178 n. 18 (5th Cir. 1968), where the court said: "Defendants stated: The air units would heat. They did not heat. How much more specific can one get?" The motion to dismiss cannot, therefore, be sustained on this ground.

■ The defendants make a final attack on the affidavit of Frank A. Wortman. They contend that none of the facts recited in that affidavit can be considered by this court as established, since the defendants did not have the opportunity to cross examine him. However, as pointed out by the plaintiffs, and not refuted by the defendants, the defendants knew of Wortman's existence and his interest in Nispan prior to the October 12, 1968, deposition of Mrs. Ikaris, because the documents produced (apparently at the deposition) showed this. In addition, both Mrs. Ikaris and Tryforos told of Wortman's "role" at their depositions. Although discovery was opened on the issue of jurisdiction, the defendants did not choose to depose Mr. Wortman. They also did not move to strike the affidavit when it was filed in this case first on November 14, 1968, and again on March 17, 1969. This conduct of the defendants, in this court's opinion, constitutes a waiver of any objection to the facts as stated in the affidavit, insofar as the issue of jurisdiction is concerned. The defendants are not, however, precluded from contesting the facts as related in the affidavit, insofar as those

facts bear on any other issue. Cf. Klingman v. National Indemnity Co., 317 F.2d 850, 854 (7th Cir. 1963). Although the proceedings in Klingman were on summary judgment, where, as here, it is necessary to develop the facts or factual controversies, the same reasoning applies.

It is therefore ordered that the defendants' motion to dismiss be, and it is hereby denied.