Nicholas J. P. TRYFOROS and Bebe Spanos Ikaris, Plaintiffs-Appellants,

and

Vasillios G. Spanos, Appellant,

v.

ICARIAN DEVELOPMENT COMPANY, S. A., et al., Defendants-Appellees.

Nos. 74–1590, 74–1591 and 74–1676.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 3, 1975.

Decided July 3, 1975.

Rehearing Denied Sept. 5, 1975.

---

Eugene Gressman, Washington, D. C., Sean M. O'Hara, Los Angeles, Cal., for plaintiffs-appellants.

Seymour F. Simon, H. Reed Harris, Chicago, Ill., for defendants-appellees.

Before PELL, STEVENS and DOYLE,* Circuit Judges.

STEVENS, Circuit Judge.

These consolidated appeals seek reversal of orders dismissing a shareholder derivative action with prejudice and awarding defendants a judgment of $92,500 for their attorneys' fees. The three appellants include two former shareholders of Icarian Development Company, S.A. ("Icarian"), a Panamanian corporation, who initiated this action back in 1968, and Vasillios G. Spanos, a resident of Greece, who, on March 11, 1974, responded to a notice to shareholders for the purpose of objecting to the proposed dismissal of the action.[1] We must consider (1) the appellants' standing; (2) whether it was proper for the dismissal to be with prejudice; and (3) whether, as a matter of Illinois law, the district court's findings support the award of fees.

The complaint filed by appellants Tryforos and Ikaris [2] on April 8, 1968, alleged that the 13 defendants,[3] other than Icarian, had misappropriated $285,000 in corporate assets. Process was purportedly served on Icarian by delivering a copy of the summons to the wife of Icarian's president at his residence. No attorney ever entered an appearance on behalf of Icarian. All other defendants did appear and have been represented by the same counsel throughout the bitter and protracted pretrial proceedings.[4]

Plaintiffs however, changed their attorneys frequently,[5] and thereby, accord-

---

* Circuit Judge William E. Doyle of the Tenth Circuit is sitting by designation.

1. Prior proceedings in the case are reported at 47 F.R.D. 191 (N.D.Ill.1969) and 49 F.R.D. 1 (N.D.Ill.1970).

2. Plaintiffs had been appointed liquidating trustees of Nispan Corporation, which had held stock in Icarian since 1963. They are both citizens of New York.

3. George L. Manta, Christ Karafotias, Barbara Manta, Frank J. Manta (a/k/a Mark Frank Manta), Leo J. Manta, Stephen J. Manta, Helen Manta, Leo G. Manta, Clara Manta Karones, Angela Manta Karafotias, Niki Manta Marx, Frank J. Manta and Leo J. Manta as co-executors of the Estate of John L. Manta, deceased, and J. L. Manta, Inc.

4. The 44-page docket sheet includes over 500 entries.

5. Finding No. 5 entered by the district court on January 28, 1974, in support of the order directing the notice of a proposed dismissal to be sent to shareholders reads as follows:

"5. Plaintiffs have been represented by a succession of attorneys. They have been represented by the following attorneys successively during the time periods indicated: David J. Krupp, from the filing of the action until October 22, 1969;
William P. Rosenthal and Harvey J. Barnett and Rosenthal & Schanfield from October 22, 1969 to February 10, 1970;
Mrs. Ruby LaNace Hurst, from February 16, 1970 to November 9, 1970;
Robert G. Jaros, from March 4, 1970 to November 9, 1970;

ing to the district court's findings, added to the complexity of the matter unnecessarily, prolonged the action, and increased the time which defendants' counsel were required to spend.[6] The extensive discovery and preparation culminated in the entry of a 77-page Final Pretrial Order on February 20, 1973.[7] The court found, however, that plaintiffs deliberately sought to avoid a trial on the merits in the Northern District of Illinois, having determined some time in 1972 that it would be more advantageous to litigate in another forum.[8]

On November 8, 1973, plaintiffs advised the court that they had disposed of their stock in Icarian. After requiring them to submit evidence that a bona fide sale had been made, the court concluded that plaintiffs could not maintain the derivative action on behalf of the corporation and directed the clerk to mail a written notice of a proposed dismissal with prejudice to all shareholders or persons claiming to be shareholders. Such a notice was sent to appellant Vasillios G. Spanos. The notice stated that any person desiring to appear on behalf of Icarian should so indicate in writing on or before March 4, 1974, and appear in person or by counsel in open court on March 11, 1974.[9] The notice made no reference to the procedure to follow if a shareholder merely wanted to object to the form of the dismissal.

On March 11, 1974, Sean M. O'Hara, a member of the California Bar, who represented that he was counsel for Vasillios G. Spanos, an Icarian shareholder, appeared before the district court[10] and tendered written objections to the proposed dismissal with prejudice. He asserted that the record disclosed that Icarian had never been made a party to the litigation and therefore that it would be improper to dismiss the action with prejudice. The district court authorized O'Hara to appear on behalf of Mr. Spanos and granted him leave to make the objections a part of the record.[11] He stated, however, that he wanted Spanos "to subject himself to the jurisdiction of

---

Allan J. Newman and Robert S. Foster, from May 6, 1970 to September 14, 1970;

Barry L. Kroll, from September 22, 1970 to August 13, 1971;

Eleanor Jackson Piel and Richard F. Watt, from August 13, 1971. Mrs. Piel was granted leave to withdraw on July 31, 1973. Mr. Watt has moved for leave to withdraw as attorney for plaintiffs, but the Court has denied leave for the purpose of continuing to have counsel in this jurisdiction on which notices directed to plaintiffs can be served. In each instance in which plaintiffs' counsel was replaced, a motion was made by such counsel for leave to withdraw and the motion was granted by the Court. It appeared in each instance that the withdrawal of counsel for plaintiffs, except possibly the withdrawal of Mr. Jaros, was the consequence of disagreements between plaintiffs and their counsel as well as in some instances failure of plaintiffs to pay their counsel." Plaintiffs' App. at 167–168.

6. See Finding No. 7 entered on April 10, 1974, in support of the award of fees. Plaintiffs' App. 183–184.

7. The contested issues of fact identified in the pretrial order included:

"15. Was Icarian Development Company, S. A. properly served and is it a necessary and indispensable party in this action?" Plaintiffs' App. at 89.

8. On or about August 1, 1973, the plaintiffs informed the court that they did not want to proceed with the litigation, apparently for a mixture of financial and tactical reasons. See Finding No. 8 entered on April 10, 1974. Plaintiffs' App. 184.

9. The notice provided in pertinent part:

"The Court had indicated that it proposes to enter an order of dismissal with prejudice on March 11, 1974, on the grounds of failure to prosecute and disposition by plaintiffs of their shares of Icarian Development Company, S. A. If you wish to appear in said action on behalf of Icarian Development Company, S. A., you are requested to notify the undersigned in writing on or before March 4, 1974, and to appear in person or by counsel . . . on March 11, 1974. . . ."

10. A member of the local Bar orally moved the admission of Mr. O'Hara "for purposes of this matter" in accordance with Rule 6(b) of the General Rules of the United States District Court for the Northern District of Illinois. Transcript of Proceedings, March 11, 1974, at 3–4.

11. Transcript of Proceedings, March 11, 1974, at 17.

the court individually so that if there is anything in the way of contempt or otherwise growing out of this, he will be subject to the jurisdiction of this court," and directed that within two weeks he file a petition unambiguously stating that he was not a participant in pending New York litigation or in any way in collusion with the plaintiffs.[12] After further colloquy, the judge stated that he would deny O'Hara's right to appear,[13] that he wanted further evidence of Spanos' stock ownership, and that he was denying Spanos' objections.[14]

Subsequently, on March 25, 1974, a member of the local Bar who did not enter a formal appearance for Spanos, tendered another set of written objections prepared by O'Hara; he again relied on the failure to serve Icarian as a reason for not dismissing the action with prejudice. He also tendered the affidavit of Vassilike G. Spanos, wife of V. G. Spanos, which stated that her husband was a shareholder of Icarian but was unable to file a personal affidavit within the time limits set by the court because he was residing in Greece. Two days later, on March 27, 1974, the district court ordered the appearance of O'Hara stricken from the files of the court[15] and granted defendants' motion to deny O'Hara leave to file the further objections of V. G. Spanos. The order stated that filing was denied because O'Hara

was not a member of the Bar of the State of Illinois or of the district court and because O'Hara had failed to file a petition signed by V. G. Spanos himself as ordered by the court.[16]

Thereafter, on March 27, 1974, the case was dismissed with prejudice for failure of the plaintiffs to prosecute.[17] Jurisdiction was retained for the purpose of assessing attorneys' fees, which were awarded the defendants on April 10, 1974, in the amount of $92,500.

O'Hara filed a notice of appeal on April 25, 1974, from the two district court orders on behalf of the two plaintiffs and V. G. Spanos (No. 74–1591). In response to defendants' motion, the district court on May 7, 1974, quashed this notice of appeal, ruling that O'Hara was not an attorney of record for any of the three appellants, that he had not filed the affidavit required by District Court Rule 39,[18] and that appellants were not represented by counsel having an office within the district.[19] In response, Tryforos and Ikaris filed a pro se notice of appeal on May 10, 1974 from the dismissal with prejudice and award of attorneys' fees (No. 74–1590), and O'Hara filed a notice of appeal on June 4, 1974, from the order quashing his first notice (No. 74–1676).

Before this court all three appellants contend that the district court erred in entering the dismissal with prejudice be-

---

12. *Ibid.*

13. Transcript at 21.

14. Transcript at 28.

15. Such an appearance had been filed on March 11, 1974.

16. The order further amplified the reasons for denying the objections of V. G. Spanos tendered by O'Hara on March 11, 1974:

"The objections to the Findings of Fact, Conclusions of Law and Order presented by Mr. O'Hara on March 11, 1974, are also denied on the ground that they do not constitute a Petition by V. G. Spanos and that the filing of such objections would not subject V. G. Spanos who the Court is informed claims to be a citizen and resident of Greece to the jurisdiction of this Court, and on the further ground that although V. G. Spanos

was granted until March 25, 1974 to place his own Petition of record he has failed to do so, or to appear or to request the Court to grant any extension of time beyond March 25, 1974 for the purpose of doing so."

17. No other shareholders appeared either to object to the proposed dismissal or to attempt to intervene.

18. Affidavit Evidencing Ethical Conduct.

19. N.D. Ill. (Gen.) R.7 requires that an attorney not having an office within the Northern District of Illinois designate a local member of the bar upon whom service of papers may be made. On March 11, O'Hara had stated that he would supply the court with a name within five days, but this was, apparently never done.

cause the court lacked *in personam* jurisdiction over Icarian, an indispensable party to the derivative action. They allege that Icarian was never served with process and never appeared to submit itself to the court's jurisdiction. Tryforos and Ikaris also challenge the lower court's jurisdiction and authority to award the attorneys' fees.

## I.

■ Although all three appellants challenge the district court's jurisdiction because of the alleged failure to obtain *in personam* jurisdiction over Icarian, their interests in the appeal are quite different. Appellants Tryforos and Ikaris are, of course, vitally interested in the judgment awarding $92,500 in fees to the defendants. Since they have sold their Icarian stock, however, they have no interest in the judgment dismissing Icarian's claim with prejudice unless that action was a necessary predicate to the fee award. We think it plain, however, that the character of the dismissal as either with or without prejudice is irrelevant to the question whether the fee award was proper.[20] We conclude that appellants Tryforos and Ikaris have standing to attack the judgment for fees but no standing to challenge the dismissal with prejudice.

■ On the other hand, appellant Spanos has no personal stake in the fee award, but as a shareholder of Icarian does have an interest in the character of the dismissal.[21] His standing is questionable not because of his lack of interest but rather because it is unclear, as a

matter of procedure, that he sufficiently subjected himself to the jurisdiction of the district court to entitle him to prosecute this appeal.[22] That question is not an easy one.

■ The question breaks into two parts: whether Spanos complied with the conditions imposed by the district court for filing objections to the proposed dismissal, and whether those conditions were appropriate. The district court found Spanos' objections unacceptable because (a) no member of the local Bar had entered an appearance on his behalf, and (b) the objections were not supported by a sworn "petition" executed by Spanos himself. The court's reasons for insisting on such conditions were the expressed desire to be able to hold Spanos accountable for costs or contemptuous conduct if such should thereafter occur. In addition, the district court wanted assurance that Spanos was not merely trying to protect the ability of other interests further to pursue their claim in another forum.

If Spanos had requested leave to appear for the purpose of further prosecuting the litigation on behalf of Icarian, there could be no question about the reasonableness of the conditions imposed by the court. In view of the unstable and transitory character of the representation of the interests of Icarian shareholders throughout the litigation, the court was understandably concerned about the quality of a Greek shareholder's representation by California counsel in Chicago litigation involving an inactive Panamanian corporation. The objection

---

20. We also disagree with the suggestion that the failure to join an indispensable party was a jurisdictional defect which precluded an award of fees. *See* n. 25, *infra*.

21. If the district court's dismissal with prejudice were to be upheld, it would presumably bar any further litigation by either Icarian or any of its shareholders seeking recompense for defendants' alleged wrongdoing. *See* 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 6043 (1970 Rev'd Vol.).

22. The law is clear that a non-party shareholder who appears, pursuant to a Rule 23.1 no-

tice, to present objections to a proposed dismissal or settlement of a derivative action may appeal an adverse decision even though he has not been formally made a party to the action. *Cohen v. Young,* 127 F.2d 721, 724 (6th Cir. 1942); *Ackert v. Ausman,* 217 F.Supp. 934, 935 (S.D.N.Y.1963); 3B J. Moore, Federal Practice ¶ 23.1.24[3] (1974); *cf. Pianta v. H. M. Reich Co.,* 77 F.2d 888, 890 (2d Cir. 1935). Similarly, no such appeal may be taken by a shareholder who has failed to make such an appearance. *Cf. Research Corp. v. Asgrow Seed Co.,* 425 F.2d 1059, 1060–1061 (7th Cir. 1970).

which Spanos sought to raise, however, merely went to the form of the dismissal and did not raise the possibility of further protracted proceedings before the district court. Spanos' attorney merely endeavored to direct the court's attention to a defect in the record which, as he argued, made it inappropriate to dismiss the action with prejudice.

In his initial presentation of the objection, Spanos complied with the local rules of court,[23] as well as the conditions set forth in the notice to shareholders. His written objections though signed by O'Hara as his attorney, contained an unqualified representation that he was the owner of 950 shares of Icarian stock. That representation was corroborated, though not proved beyond a reasonable doubt, by the affidavit, to which a copy of Spanos' stock certificate was attached, subsequently executed by Spanos' wife.

We are persuaded that the underlying purpose of the Rule 23.1 requirement of notice to shareholders as a precondition to the dismissal of derivative litigation would be frustrated if the showing made by Spanos in this case was considered insufficient to entitle him to file his objections to the form of dismissal. For granting leave to file objections does not involve any determination of their factual or legal sufficiency. Insofar as the conditions imposed by the court in its notice to shareholders were appropriate to the mere filing of objections to the form of the proposed dismissal, they were met by Spanos; the additional conditions subsequently imposed—an appearance by local counsel, a "petition" personally executed by Spanos and a denial of association with a plan to pursue

litigation in another forum—were not appropriate conditions to the filing of Spanos' objections. We conclude that Spanos adequately raised the questions of the district court's jurisdiction over Icarian and, since Icarian was admittedly an indispensable party, the propriety of dismissing the action with prejudice.

■ We are also satisfied that the district court exceeded its power when, on May 7, 1974, it entered an order purporting to quash the notice of appeal filed on April 25, 1974, by O'Hara on behalf of appellant Spanos. Even if that notice was defective because not signed by a member of the local Bar, such a defect was surely not jurisdictional. Power to quash the notice was therefore vested in this court rather than the district court. No motion to dismiss the first appeal having been made in this court, we need not consider the significance of the failure to have the notice executed by a member of the local Bar.[24] Accordingly, we turn to the merits.

## II.

■ In a shareholders' derivative action brought on its behalf Icarian was certainly an indispensable party. No judgment could effectively bind the corporation unless the court first acquired *in personam* jurisdiction over it. *Davenport v. Dows*, 85 U.S. (18 Wall.) 626, 627, 21 L.Ed. 938. Since no appearance was filed on behalf of Icarian, it was not a party unless it was validly served with process. Service on the wife of the president of the corporation does not constitute effective service under Rule 4(d)(3) of the Federal Rules of Civil Procedure.[25]

23. As noted above, a member of the local Bar moved O'Hara's admission for the purposes of the motion, representing that he was duly admitted to practice in California. In colloquy it was also developed that O'Hara had not been involved in any disciplinary proceeding. Nothing in the record suggests any reason why O'Hara should not have been accorded the right to appear on behalf of an objecting shareholder.

24. As we conclude that an effective notice of appeal was filed on behalf of all three appel-

lants on April 25, 1974, within 30 days of the March 27, 1974, order dismissing the action with prejudice, it is clear that the issue of the propriety of such a disposition is appropriately before us. *See Swanson v. American Consumer Industries, Inc.*, 517 F.2d 555 (7th Cir. 1975).

25. The rule provides that service shall be made as follows:

"(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit

There is nothing in the record, including the Marshal's Return, to identify the individual to whom the summons was delivered as an agent authorized to receive service of process on behalf of the corporation. Moreover, since the record discloses that there was a subsequent unsuccessful attempt to effect service on the corporation, and since one of the contested issues identified in the Final Pretrial Order was the sufficiency of the service of process on Icarian, the ambiguous Marshal's Return provided an inadequate basis for the court's conclusion that all defendants had been served with process.

■ Inasmuch as Icarian was not a party to the litigation, the order of dismissal was necessarily without prejudice to the rights of the corporation.

### III.

■ We do not accept appellants' contention that the failure to join an indispensable party deprived the district court of power to award fees.[26] On the other hand, the Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 n. 31 (1975), requires us to reject appellees' position that we should look to federal law as authority for the award. Since this is a diversity case, the question of plaintiffs' liability for defendants' fees must be determined by the law of Illinois. *Trust Co. of Chicago v. National Surety Corp.*, 177 F.2d 816, 818 (7th Cir. 1949).[27]

In this case, even absent Icarian, the district court possessed personal jurisdiction over all other parties and subject matter jurisdiction over the controversy.

under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

26. While some early decisions apparently spoke of the failure to join an indispensable party as a jurisdictional defect, it is clear that the far greater weight of authority is to the contrary. As the Supreme Court indicated as long ago as *Mallow v. Hinde*, 25 U.S. (12 Wheat.) 123, 126, 6 L.Ed. 599:

"We do not put this case upon the ground of jurisdiction, but upon a much broader ground. . . . We put it on the ground that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court."

Thus, the reason for a dismissal, upon the failure to join an indispensable party, is not jurisdictional, but is based on a determination by the district court that, in its equitable discretion, it ought not to proceed to render a decision that might affect that absent party's rights. *See* discussion and cases cited in 3A J. Moore, Federal Practice ¶ 19.05[2], at 2209 & n. 7 (1974); 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1611, at 115–116 & n. 21 (1972). As Professors Wright and Miller have emphasized:

"[I]t is important to recognize that the federal court does have jurisdiction both over the parties properly before it and the subject matter of the action, even though the indispensable party cannot be joined." *Id.*, § 1611, at 118 (footnote omitted).

27. Appellees argue that the decisions of the Supreme Court in *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702; *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263, and *Vaughn v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88, overruled *Trust Co.* insofar as they recognized the unquestioned power of a federal court to award counsel fees to a successful party when his opponent has acted

"in bad faith, vexatiously, wantonly, or for oppressive reasons."

412 U.S. at 5, 93 S.Ct. at 1946, quoting 6 J. Moore, Federal Practice ¶ 54.77[2], p. 1709 (2d ed. 1972).

None of these Supreme Court decisions was a diversity case, however. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Court reaffirmed the continuing validity of the line of cases represented by *Trust Co.* After noting the various equitable exceptions, including that relied upon by appellees here, developed by the federal courts to the prevailing American rule against the award of such fees, the Court stated:

"A very different situation is presented when a federal court sits in a diversity case. '[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.' 6 J. Moore, Fed-

■ As we concluded in *Trust Co.,* the law of Illinois in this respect is well settled.

At common law costs were never recoverable, and they can be recovered only in cases where there is statutory authority therefor. Any party claiming a judgment for his costs against his adversary must bring himself within the operation of some statutory provision, and courts have no power to adjudge costs against anyone on merely equitable grounds.

177 F.2d at 818, quoting *Patterson v. Northern Trust Co.,* 286 Ill. 564, 568, 122 N.E. 55, 57 (1919). *See also House of Vision, Inc. v. Hiyane,* 42 Ill.2d 45, 61–62, 245 N.E.2d 468, 472 (1969), *appeal dismissed & cert. denied,* 396 U.S. 8, 90 S.Ct. 26, 24 L.Ed.2d 8.

■ The only Illinois statutory authorization for the award of attorneys' fees that is arguably relevant is § 41 of the Civil Practice Act, Ill.Rev.Stat.1973, ch. 110, § 41:

Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial.

In discussing the purpose of § 41, the Illinois Appellate Court in *Ready v. Ready,* 33 Ill.App.2d 145, 161, 178 N.E.2d 650, 658 (1961), explained:

Section 41 is an attempt of the legislature to penalize the litigant who pleads frivolous or false matters or brings a suit without any basis in law and thereby puts the burden upon his opponent to expend money for an attorney to make a defense against an untenable suit.

*See also Theodorou v. Community Builders, Inc.,* 6 Ill.App.3d 277, 280, 285 N.E.2d 474, 476 (1972); *Manchester Insurance & Indemnity Co. v. Strom,* 122 Ill.App.2d 183, 190, 258 N.E.2d 150, 153 (1970); *Hearst Corp. v. Associated Trade Press, Inc.,* 98 Ill.App.2d 360, 365–366, 240 N.E.2d 386, 389 (1968). Thus, § 41 has been construed to authorize fees in cases which were instituted in bad faith, or in which untrue matter was alleged in the pleadings.

Appellees do not argue that the fee award may be supported under § 41. The district court's findings clearly do not bring this case within that section. The court concluded that fees were awardable because of the "oppressive and vexatious manner in which [appel-

---

eral Practice ¶ 54.77[2] (1974 ed.), at 1712–1713 (footnotes omitted). See also 2 Speiser, Attorneys' Fees §§ 14:3, 14:4 (1973); Annotation, Prevailing Party's Right to Recover Counsel Fees in Federal Courts, 8 L.Ed.2d 894, 900–901. Prior to the decision in *Erie R. Co. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938), this Court held that a state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts: '[I]t is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts.' *People of Sioux County v. National Surety Co.,* 276

U.S. 238, 243 [48 S.Ct. 239, 241, 72 L.Ed. 547] (1928). The limitations on the awards of attorneys' fees by federal courts deriving from the 1853 Act were found not to bar the award. *Id.,* at 243–244 [48 S.Ct. 239 at 241]. We see nothing after *Erie* requiring a departure from this result. See *Hanna v. Plumer,* 380 U.S. 460, 467–468 [85 S.Ct. 1136, 1141–1142, 14 L.Ed.2d 8] (1965). The same would clearly hold for a judicially created rule, although the question of the proper rule to govern in awarding attorneys' fees in federal diversity cases in the absence of State statutory authorization loses much of its practical significance in light of the fact that most States follow the restrictive American rule. See 1 Speiser, *supra,* §§ 12:3, 12:4."

421 U.S. at 259, 95 S.Ct. at 1622 n. 31. Thus, it is to state law that the district courts must look in determining whether attorneys' fees may be awarded in a diversity case.

lants] have prosecuted the action and unnecessarily prolonged it. . . ."[28] Nowhere in the findings or order, however, is there any suggestion that Tryforos and Ikaris did not institute the suit in good faith, or that the cause of action was essentially frivolous.[29] Accordingly, the award of fees must be set aside.

The judgment of dismissal entered on March 27, 1974, as amended on April 10, 1974, must be modified to provide that it is without prejudice to the rights of Icarian, and to eliminate the award of fees.

So ordered.

28.   "In view of plaintiffs' stated refusal to proceed with prosecution of this action, their unverified claim that they disposed of their stock in Icarian on October 13, 1973, which, if true, precludes them from continuing to maintain this action on behalf of Icarian or on their own behalf, the failure of plaintiffs to act in good faith, their misrepresentations, and the oppressive and vexatious manner in which they have prosecuted this action and unnecessarily prolonged it, and in view of the plaintiffs having filed this action as one seeking equitable relief, the Court finds that the defendants represented by Attorneys Simon, Fleisher and Harris are entitled to be awarded reasonable attorneys' fees and costs."

29.   Indeed, the denial of plaintiffs' motion for partial summary judgment in the amount of $285,000 was predicated on the existence of genuine issues of fact. At no time has the court made any ruling on the merits of plaintiffs' underlying claim.