Edward W. CUTLER, Plaintiff,

v.

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a corporation, and Bank of America National Trust and Savings Association, Davies Street Branch, London, England, a branch, Defendants.

No. C–76–826–CBR.

United States District Court, N. D. California.

Dec. 14, 1977.

Kent A. Russell, Belli & Choulos, San Francisco, Cal., for plaintiff.

Vernon L. Goodin, Alexander L. Brainerd, Thomas H. Sloan, Jr., Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Defendant Bank of America Trust and Savings Association ("Bank of America") has moved for judgment on the pleadings with respect to plaintiff's claims for punitive damages and emotional distress damages for fraud, Complaint ¶¶ 32 and 33, as well as all plaintiff's claims grounded in intentional infliction of emotional distress, Complaint ¶¶ 56–61. In addition, plaintiff has moved for a determination that attorneys' fees will be awarded to the prevailing party. Arguments on both motions were heard November 3, 1977.

The action arises from the April 24, 1975, robbery of the Bank of America's Davies Street Branch in London, England. Plaintiff seeks to recover for the loss of a large amount of cash and other items from his safety deposit box during the robbery. He alleges eleven separate claims for negligence, fraud, conversion, breach of warranty and of contract, and intentional infliction of emotional distress. By order dated August 22, 1977, the Court ruled that English law governs plaintiff's claims for punitive damages, intentional infliction of emotional distress, and conversion. Defendant's present motion addresses the question of whether certain claims may be maintained under that law.

Plaintiff has cited no authority, and the Court is aware of none, for the proposition that a claim for intentional infliction of emotional distress, in the absence of an allegation of physical harm, is cognizable under English law. Although a plaintiff who has suffered physical harm caused by nervous shock may state a claim against a defendant who willfully did an act plainly calculated to cause such harm, *Wilkinson v. Downton*, [1897] 2 Q.B. 57, no physical harm has been alleged here. Accordingly, plaintiff's claim for relief on grounds of intentional infliction of emotional distress fails to state a claim for which relief can be granted under English law.

With respect to plaintiff's fraud claim, the parties agree that the corresponding English tort is that of deceit, and that the controlling authority on the award of punitive and emotional distress damages therefor is found in *Rookes v. Barnard*, [1964] A.C. 1129, and *Broome v. Cassell & Co.*, [1972] A.C. 1027. Although neither case involved the award of damages for deceit, it is clear from both that damages of this nature can only be awarded under three headings: "punitive" or "exemplary", "aggravated", and "at large". *Broome v. Cassell & Co., supra*, at 1073–1074; *Rookes v. Barnard, supra*, at 1221, 1229–1230. It is also clear that historically such damages were available only for certain specified torts. Prior to *Rookes v. Barnard, supra*, it was settled law that neither punitive nor aggravated damages were available in actions for deceit. *Broome v. Cassell & Co., supra*, at 1076. Although there is some doubt as to whether *Rookes* was intended to change this result, *see Mafo v. Adams*, [1970] 1 Q.B. 548, 558 (Ct.App.); *Broome v. Cassell & Co., supra*, at 1080, this Court cannot set such a precedent for English law, particularly in the face of the clear pronouncements of two of the judges in *Broome v. Cassell & Co., supra*, that *Rookes* made no such change in the law. *Id.* at 1076, 1130–1131. Although neither judge dealt with the question of whether damages could be "at large" in deceit, even in the absence of aggravated or punitive damages, the Court is aware of no authority to that effect. Accordingly, the Court must conclude that the common law rule that mental suffering is not assessable, *Behrens v. Bertram Mills Circus Ltd.*, [1957] 2 Q.B. 1, 28; *Hinz v. Berry*, [1970] 2 Q.B. 40, 42, 44, is applicable to this case.

Plaintiff's motion for attorneys' fees at this stage presents only a choice of law question. Despite plaintiff's concession at oral argument that no authority has been offered to support the application of English law to this issue, further research has convinced the Court that the law is otherwise. The overwhelming weight of authority holds that in the absence of countervailing federal policies, in diversity cases a federal court must apply the law of the state

in which it sits to the question of taxation of attorneys' fees. *E. g., Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (dictum); *Sioux County v. Nat. Surety Co.*, 276 U.S. 238, 243, 48 S.Ct. 239, 72 L.Ed. 547 (1928); *Tryforos v. Icarian Development Company, S.A.*, 518 F.2d 1258, 1265 (7 Cir. 1975). Where the forum state would look to another state's law on that issue, the federal court must do likewise. *Stokes v. Reeves*, 245. F.2d 700, 703–704 (9 Cir. 1957); *Prudential Ins. Co. of America v. Carlson*, 126 F.2d 607, 611 (10 Cir. 1942); *Corrosion Rectifying Co. v. Freeport Sulphur Co.*, 197 F.Supp. 291, 292–293 (S.D.Tex.1961). Because this case involves international banking, jurisdiction is founded on 12 U.S.C. § 632. However, there is no federal substantive law concerning the claims at issue here. Since it is established law that the source of the right, rather than the basis of federal jurisdiction invoked, controls determination of the applicable law, *Van Gemert v. Boeing Co.*, 553 F.2d 812, 813 (2 Cir. 1977), the Court must look to the law of California.

Defendant relies on *Conte v. Flota Mercante del Estado*, 277 F.2d 664 (2 Cir. 1960), in which the court refused to apply the law of Argentina to award attorneys' fees in a case involving a maritime tort governed by Argentine substantive law. *Id.* at 671–672. However, the Court has found no case following that result, and the reasoning on which it is based—that attorneys' fees provisions must be followed only if they appear in the statute creating the particular substantive right in issue, or at least in the Civil Code, rather than the Code of Civil Procedure—is clearly contrary to two United States Supreme Court holdings that labels imposed by the foreign law in question are irrelevant to a federal court's determination. *Sioux County v. Nat. Surety Co., supra*, 276 U.S. at 243, 48 S.Ct. 239; *Missouri State Ins. Co. v. Jones*, 290 U.S. 199, 202, 54 S.Ct. 133, 78 L.Ed. 267 (1933). Other federal courts have found no difficulty in awarding attorneys' fees pursuant to broadly applicable state statutes, whether or not labelled "procedural". *Tryforos v. Icarian*

*Development Company, S.A., supra*, 518 F.2d at 1265–1266; *Forno v. Coyle*, 75 F.2d 692, 695–696 (9 Cir. 1935).

Thus, the Court is initially directed to the law of California, including its law of conflicts of laws. Although the issue is far from clear, the Court concludes that a California court would look to the governing substantive law to determine the appropriateness of an award of attorneys' fees under the circumstances presented here. That is the result suggested by the only California case research has disclosed dealing with this issue. *Dixon Mobile Homes, Inc. v. Walters*, 48 Cal.App.3d 964, 122 Cal.Rptr. 202, 205 (1975). Moreover, plaintiff is a resident of Spain, and all the operative events involved in this case took place in England. California's only connections with the case are the Bank of America's California headquarters, which defendant has conceded is not significant for choice of law purposes (Brief in Support of Motion for Applying English Law, filed June 27, 1977, at 3), and its role as the forum state. Applying the governmental interest approach which currently governs choice of law in California courts, *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974), California, as the forum, clearly has an interest in judicial administration and in the regulation of its bar. But England has a strong interest in regulating tortious conduct within its boundaries and in compensating foreign visitors injured there, an interest which is effected through its system of awarding damages. English judges have recognized that the system for awarding attorneys' fees influences the necessity for awards of punitive damages. *See Broome v. Cassell & Co., supra*, at 1083. Since punitive damages are unavailable in this case, a failure to award attorneys' fees could substantially impair England's tort law policies of deterrence and compensation. Therefore, this is no false conflict. *Hurtado v. Superior Court, supra*, 11 Cal.3d at 580, 114 Cal.Rptr. at 110, 522 P.2d at 670. The resolution of the choice of law question thus requires the Court to consider which jurisdiction's inter-

est would suffer greater impairment by subordination to the policy of the other. *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 320–321, 128 Cal.Rptr. 215, 219–220, 546 P.2d 719 (1976). The quality of the conflicting laws as a matter of social policy is not an issue. *Id.*

 California, like all American jurisdictions, deliberately rejected the English rule regarding costs for substantial policy reasons. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Although the American rule is thus deeply rooted in our jurisprudence, as a practical matter the availability of attorneys' fees in this class of cases is unlikely to stir up litigation in California; nor does California have any substantial concern with the possibility of discouraging non-resident plaintiffs from suit in its courts. And since the forum court is free to apply its own appropriate procedures for determination and enforcement of attorneys' fees, *cf. Sioux County v. Nat. Surety Co., supra*, 276 U.S. at 244, 48 S.Ct. 239, the burden on the court need be no greater than in the numerous cases in which reasonable attorneys' fees are awarded pursuant to California or federal law. For these reasons, the Court finds that the selective application of England's rules of tort compensation to cases brought in California constitutes the more substantial impairment here.

Although the Court thus concludes that English law governs the award of attorneys' fees in this case, it should be noted that contrary to plaintiff's apparent assertion, such awards to the prevailing party are not a matter of course but rest to some extent in the discretion of the court. Moreover, although the issue has not fully been briefed, it is apparent that the 40% contingency fee sought by plaintiff is fundamentally inconsistent with the English system of awarding damages and costs. Therefore, neither the fact nor the amount of any award can be determined at this time.

Accordingly, IT IS HEREBY ORDERED that defendant's motion for partial judgment on the pleadings is granted, and that plaintiff's claims for intentional infliction of emotional distress and for punitive and emotional distress damages for fraud are dismissed.

IT IS HEREBY FURTHER ORDERED that the law of England shall apply to the award, if any, of attorneys' fees in this case.