**Hammer DeROBURT, Plaintiff,**

v.

**GANNETT CO., INC., a Delaware corporation, and Guam Publications, Inc., a Hawaii corporation, both dba Pacific Daily News, Defendants.**

Civ. No. 78–0375.

United States District Court,
D. Hawaii.

March 10, 1983.

Genevieve S. Richardson, A. Bernard Bays, Michael C. Davis, Carlsmith, Carlsmith, Wichman & Case, George M. Allen, Honolulu, Hawaii, Donald C. Williams, Agana, Guam, for plaintiff.

David J. Dezzani, James J. Bickerton, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for defendants.

## DECISION AND ORDER

SAMUEL P. KING, Chief Judge.

This action involves an international libel suit filed in 1978 by Hammer DeRoburt, the President of Nauru,[1] against Gannett Co., Inc. ("Gannett"), one of the largest newspaper publishers in the United States, and Guam Publications, Inc., a subsidiary of Gannett. After nearly four years of pretrial litigation, defendants were successful in obtaining a dismissal of the suit. In its Order dated October 13, 1982, the Court ruled that the issues presented by the suit were nonjusticiable under the act of state doctrine. *See DeRoburt v. Gannett Co.,* 548 F.Supp. 1370, 1384 (D.Hawaii 1982).

The only issues before the Court now are whether defendants are entitled to an award of attorneys' fees and to what extent defendants are entitled to costs under Federal Rule of Civil Procedure 54(d). Defendants seek attorneys' fees on the grounds that the applicable law is Nauru law, which is substantially similar to English law, and that Nauru/English law allows the prevailing party to recover attorneys' fees. The amount of attorneys' fees claimed by defendants is in excess of $473,000.[2] In addition, defendants seek reimbursement for nearly all their costs on the ground that they are a "prevailing party" entitled to such costs under Rule 54(d). The total amount of costs claimed, exclusive of costs related to defendants' present motion, is $77,627.73. Most of these costs relate to the taking of depositions; a small amount relates to witness fees, court reporters' fees, and other expenses.

A brief recitation of the facts and allegations involved in the underlying suit will suffice for purposes of this Decision.[3] Plaintiff DeRoburt alleged that defendants libeled him in two articles published in the *Pacific Daily News,* a daily newspaper printed in Guam by Guam Publications. The first article, which appeared on May 30, 1978, reported that DeRoburt personally delivered to the Marshall Islands Political Status Commission a loan made by Nauru in support of separation of the Marshall Islands from Micronesia. The second article, which appeared on June 29, 1978, reported the angry reactions of Nauru officials to the first story and repeated the statements made in that story.

DeRoburt alleged that the stories falsely and maliciously accused him of committing

---

1. Nauru is an independent island republic in the Pacific, approximately eight and one-half square miles in area with a population of about 4,000 citizens. Its vast phosphate deposits make Nauru one of the wealthiest nations, per capita, in the world. Hammer DeRoburt brings this suit in his individual rather than representative capacity.

2. Defendants claim $452,245.30 for legal services rendered from October 11, 1978 to September 30, 1982, and $21,316.10 for services rendered from October 1, 1982, through December 21, 1982. In addition, defendants seek reimbursement for fees relating to the present motion and various other proceedings.

3. The Court's previous orders and decisions in this case discuss the facts and allegations in greater detail. *See DeRoburt v. Gannett Co.,* 551 F.Supp. 973 (D.Hawaii 1982); 548 F.Supp. 1370 (D.Hawaii 1982); 507 F.Supp. 880 (D.Hawaii 1981); 83 F.R.D. 574 (D.Hawaii 1979).

serious crimes under Nauru law and of interfering with the internal political affairs of a foreign nation in violation of accepted standards of international diplomacy. DeRoburt sought $20 million compensatory and $20 million punitive damages. His amended complaint stated claims based on "Nauruan law of libel" and his position over the past four years has been that Nauru law was clearly the applicable law.

Jurisdiction is premised on diversity of citizenship. Gannett is a Delaware corporation with its principal place of business in New York; Guam Publications, Inc. is a Hawaii corporation with its principal place of business in Guam. DeRoburt is a citizen of Nauru.

## I. ATTORNEYS' FEES

### A. The Applicable Law

A federal court sitting in diversity must apply state law with regard to the allowance or disallowance of attorneys' fees. *E.g., Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975) (dictum); *Michael-Regan Co. v. Lindell,* 527 F.2d 653, 656 (9th Cir.1975); *Swallow Ranches, Inc. v. Bidart,* 525 F.2d 995, 999 (9th Cir.1975). The applicable state law also includes state choice of law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

In the area of torts Hawaii has rejected the traditional choice of law rule of *lex loci delicti,* which emphasized the place of impact, and has adopted in its place a more modern approach emphasizing governmental interests, dominant contacts, and policy factors. *See Peters v. Peters,* 63 Haw. 653, 660–64, 634 P.2d 586, 591–93

(1981); *see also DeRoburt v. Gannett,* 83 F.R.D. 574, 576–79 (D.Hawaii 1979) (anticipating Hawaii's adoption of modern approach). Important governmental interests include the needs of the international system, the policies of the forum and the other interested states, the protection of justified expectations, and a concern for predictability. *See Restatement (Second) of Conflict of Laws* § 6 (1971).[4] The dominant contacts test favors the state which has the "most significant relationship to the occurrence and the parties". *See id.* § 145(1); *see also id.* §§ 149–150 (applying "most significant relationship" test to defamation context).

In the absence of any specific state directives, a choice of law determination regarding a claim for attorneys' fees should be guided by the applicable substantive law of a case. *See Cutler v. Bank of America National Trust & Savings Association,* 441 F.Supp. 863, 865 (N.D.Cal.1977). In a previous Order this Court determined that Nauru law should be applied to the defamation suit subject to both the limitations of the First Amendment and the requirement that a sufficient connection exist between the suit and Nauru to support the application of Nauru law under the due process clause of the Fourteenth Amendment. *See DeRoburt v. Gannett,* 83 F.R.D. at 581–82. Although Hawaii had not yet adopted a conflict of laws rule at the time of that Order, the Court was correct in assuming that Hawaii would adopt the modern approach rather than the traditional rule of *lex loci delicti. See id.* at 578–79. Thus, the same reasons that originally led this Court to favor application of Nauru law to the merits of the suit also support its application to the question of attorneys' fees.

---

4. The *Restatement* provides that in the absence of a state statute, the factors relevant to the choice of applicable law include:

  (a) the needs of the interstate and international systems,

  (b) the relevant policies of the forum,

  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

  (d) the protection of justified expectations,

  (e) the basic policies underlying the particular field of law,

  (f) certainty, predictability and uniformity of result, and

  (g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflict of Laws* § 6(2) (1971).

Other reasons, not directly related to the choice of substantive law governing the libel suit, also support application of Nauru law to the question of attorneys' fees. First, applying Nauru law is wholly consistent with the parties' justified expectations and a concern for predictability. After insisting for four years that Nauru law is the applicable law, plaintiff certainly cannot claim that application of Nauru law to the question of attorneys' fees is unexpected. Second, Nauru's practice of awarding attorneys' fees to the prevailing party is integrally connected with Nauru's overall scheme for tort compensation and therefore reflects an important foreign governmental interest. Hawaii's countervailing interest in applying the American rule regarding attorneys' fees does not appear substantial under the circumstances of this case. Applying Nauru law to defendants' claim for fees is unlikely to stir up litigation or unduly burden forum courts in other respects. *Cf. Cutler v. Bank of America Trust & Savings Association,* 441 F.Supp. at 866.

Plaintiff opposes the application of Nauru law on two additional grounds. First, he contends that attorneys' fees should not be awarded based on Nauru law because it was never finally determined that Nauru law would be applied to the merits of the case. Second, plaintiff contends that it would be inappropriate to apply Nauru law at this stage of the proceedings because Nauru law was never actually applied and never could have been applied to the case because the Court dismissed the suit as nonjusticiable under a federal doctrine. We shall examine each of these arguments in turn.

Plaintiff may be technically correct in asserting that the Court never finally determined that Nauru law would apply to the case. In its 1979 Order, the Court indicated that there was a genuine issue of fact as to whether sufficient contacts existed between Nauru and the libel action to support application of Nauru law under the due process clause of the Fourteenth Amendment. 83 F.R.D. at 582. On the other hand, as the case progressed over the next three years, it became apparent that Nauru law would in fact be applied. In its Order dated October 13, 1982, the Court clearly indicated that Nauru defamation law would be applied subject to First Amendment limitations. 548 F.Supp. at 1373.

Thus, even if plaintiff's assertion is technically correct, the Court would have no difficulty in determining from the record that contacts with Nauru were sufficient to give rise to interests of the foreign state and that application of Nauru law is neither arbitrary nor fundamentally unfair. *See Allstate Insurance Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981); *see also DeRoburt v. Gannett,* 83 F.R.D. at 582 n. 32 (describing some of the contacts with Nauru). Furthermore, plaintiff has insisted for four years that Nauru law was applicable to this case and, implicitly, that application of Nauru law would comport with due process. In effect, he has admitted that Nauru law can and should be applied to the case.

■ Plaintiff's second argument is also mistaken. In effect, plaintiff contends that the Court never "opened its doors" to Nauru law because of the posture of the case when it was dismissed and the nature of the dismissal. Admittedly, the case presents an unusual set of circumstances. Nevertheless, the choice of law applicable to a claim for attorneys' fees generally should not depend on whether a party prevails before or after trial or whether he prevails on the merits or on other grounds. Moreover, it does not matter that the case was dismissed as nonjusticiable under a *federal* doctrine. Regardless of whether plaintiff's claims were justiciable under federal law, those claims arose under the laws of either Nauru or the State of Hawaii. If the complaint were not sufficiently clear and the record not sufficiently developed to indicate which law would be applicable to the merits of the case, the Court might be reluctant to apply a law other than that of the forum to the claim for attorneys' fees. The record and the complaint, however, clearly point to Nauru law. Consequently, defendants' claim for attorneys' fees will be evaluated under Nauru law.

### B.  Application of Nauru Law

■ There is no dispute that under Nauru/English law the prevailing party is entitled to recover attorneys' fees as costs and that a court has considerable discretion in awarding such fees or costs.[5] The parties also agree that the appropriate standard under Nauru/English law for awarding such costs is the "party and party" basis, which limits costs to those which are deemed necessary or proper for the attainment of justice or for enforcing or defending the rights of the party whose costs are being taxed.

■ Two points are disputed however. First, plaintiff claims that defendants' successful motion to dismiss under the act of state doctrine could have been brought at the close of pleadings approximately four years ago, and that defendants are therefore not entitled to any of their fees or costs after the time when the motion could have been brought. The Court concludes that defendants' failure to bring their motion to dismiss at an earlier time was not the result of neglect or fault and should not affect their award of attorneys' fees or costs.

■ Plaintiff also asserts that defendants should not be allowed to recover any fees related to interlocutory motions upon which plaintiff prevailed, and that plaintiff should be able to recover his own fees related to these motions. In response, defendants contend that many or all the motions on which plaintiff prevailed were unnecessary. The Court concludes that plaintiff is entitled to an award of attorneys' fees only for those motions that concerned defendants' refusal to disclose the sources of their allegedly libelous news stories. Defendants of course are not entitled to recover their attorneys' fees concerning these particular motions. The matter will be referred to a magistrate for determination of which motions to compel, motions for protective orders, or other motions, actually involved defendants' nondisclosure of sources.

## II.  COSTS

■ Defendants are entitled to recover their costs as "prevailing parties" under Federal Rule of Civil Procedure 54(d). The determination of which costs are recoverable depends upon judicial interpretation of Rule 54(d) and relevant federal statutes, rather than upon state law. *See Hanna v. Plumer,* 380 U.S. 460, 473–74, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965). Thus, defendants cannot rely on Nauru/English law to recover any costs which they cannot recover under federal law.

Defendants are entitled to recover costs incurred since 1978 when this action was filed, even though their successful motion to dismiss was not filed until 1982. Costs related to defendants' refusal to disclose the sources of their news stories, however, will not be allowed.

■ The parties' disagreement about which costs are taxable concerns three areas: costs related to depositions, fees for reporters' transcripts of pretrial conferences and hearings, and witness fees. With respect to the first area of disagreement, the Court concludes that defendants should recover costs related to the taking of depositions so long as the depositions appeared reasonably necessary at the time they were taken. Such costs are taxable even though the action did not proceed to trial. The fees paid to reporters for recording and transcribing transcripts of depositions, as well as the reasonable expenses related to copying those transcripts, will also be taxed as costs. This case, however, does not involve the kind of exceptional circumstances that would justify taxing as costs defendants' travel expenses related to the depositions. Finally, the parties agree that defendants cannot recover the costs of videotaping depositions because of the Court's previous Order concerning such costs.

■ In addition to their deposition costs, defendants seek to recover $609.54 in fees paid for court reporters' transcripts of pretrial conferences and hearings. The Court concludes that defendants should be

---

**5.** The term "costs" in the English sense includes attorneys' fees.

allowed these costs. Lastly, defendants contend that they should be allowed to recover witness fees. Under 28 U.S.C. § 1920 (1966), defendants can recover witness fees related to depositions that appeared reasonably necessary at the time they were taken. Defendants' expert witness fees, however, are not recoverable.

IT IS HEREBY ORDERED that this matter is referred to a magistrate for determination of the actual amounts of attorneys' fees and other costs that are taxable in accordance with this Decision.